" N "
Exhibit

SGT YOELL TESTIMONY

| | |
|---|---|
| 1 | Q.    NOW BEFORE YOU INTERVIEWED THE DEFENDANT ON TAPE ON |
| 2 | APRIL 7TH, 1997, HAD YOU HAD ANY SORT OF, TO YOUR |
| 3 | KNOWLEDGE, HAS ANY SORT OF PHYSICAL LINEUP TAKEN PLACE? |
| 4 | A.    NO, SIR. |
| 5 | Q.    AND AT ANY TIME THROUGHOUT THIS INVESTIGATION, TO |
| 6 | YOUR KNOWLEDGE, HAD ANY PHOTO LINEUP EVER TAKEN PLACE? |
| 7 | A.    NO. |
| 8 |          MR. BURKE:  I'M GOING TO GIVE THIS ANOTHER SHOT. |
| 9 |          (WHEREUPON THE TAPE WAS PLAYED.) |
| 10 |          MR. BURKE:  OKAY.  FOR THE RECORD THE TAPE HAS |
| 11 | STOPPED AND I'M REMOVING THE TAPE FROM THE CASSETTE PLAYER |
| 12 | AND I'M GOING TO GIVE MADAM CLERK A CASSETTE FOLDER AS |
| 13 | WELL. |
| 14 | Q.    SERGEANT YOELL, YOU JUST LISTENED TO THAT TAPE? |
| 15 | A.    YES. |
| 16 | Q.    OKAY.  IS THAT AN ACCURATE AUDIO RECORDING OF THE |
| 17 | TAPED STATEMENT THAT YOU AND SERGEANT JUAREZ TOOK FROM THE |
| 18 | DEFENDANT ON APRIL 7, 1997? |
| 19 | A.    YES. |
| 20 | Q.    NOW AT THAT POINT NO PHYSICAL LINEUP HAD TAKEN |
| 21 | PLACE? |
| 22 | A.    THAT'S RIGHT. |
| 23 | Q.    AND AT THAT POINT IT LATER CAME TO YOUR ATTENTION -- |
| 24 | SHOWING YOU PEOPLE'S 8 IN EVIDENCE -- THAT THIS JERSEY WAS |
| 25 | RECOVERED FROM THE DEFENDANT'S APARTMENT OR THE |
| 26 | DEFENDANT'S GIRLFRIEND'S APARTMENT, IS THAT RIGHT? |
| 27 | A.    YES. |
| 28 | Q.    OKAY.  AT THE TIME THAT YOU TOOK THE STATEMENT FROM |



↑
ANTONIO
WILLIAMS

PETITIONER

↑
Bro MARK WILLIAMS

Exhibit

↑
Decease Bro
ANTHONY
WILLIAMS

Undocumented
Apr 8, 97 Photographic Lineup



ANTONIO WILLIAMS



DECEASED

ANTHONY WILLIAMS





★ W A N T E D ★
## 211 P.C. BANK ROBBERY

Caution: Armed and Dangerous

Susp stated he had a gun

MB 25-27 yrs 506-508 165

Arrest on Probable Cause for 211 P.C. RD#97-27737

Loc: American Savings Bank 3241 Lakeshore

Occ: 25 MAR 97 0903 hrs

OAKLAND POLICE DEPARTMENT

Robbery Section

Contact: Sgt. E. Juarez

Day or Night: 1(510)238-3951

PHOTO ISSUED : 26 MAR 97



★ W A N T E D ★
## 211 P.C. BANK ROBBERY

Caution: Armed and Dangerous

Susp stated he had a gun

MB 25-27 yrs 506-508 165

Arrest on Probable Cause for 211 P.C. RD#97-27737

Loc: American Savings Bank 3241 Lakeshore

Occ: 25 MAR 97 0903 hrs

OAKLAND POLICE DEPARTMENT

Robbery Section

Contact: Sgt. E. Juarez

Day or Night: 1(510)238-3951

PHOTO ISSUED : 26 MAR 97



Apr- 8 97
physical Lineup







All Photos of
Antonio Williams

Exh P

Antonio Williams, pro se

North County Jail

550 6th St

Oak Calif 94607

FILED
ALAMEDA COUNTY

OCT 2 G 1998

RONALD G. OVERHOLT, Exec. Off/Clerk
By Marsha Smith

## Superior Court of California
## County of Alameda

People of the State of California

              Plaintiff      Case No. 130594

V.S                         Dept.5

Antonio Williams

        Defendant

## MOTION TO OBJECT TO Certain Stages of Criminal Trial. Aug 27th 98 Til Sept 14 98.

I object to the following that constituted Defendant not receiving a fair trial.

1. I'm objecting to prosecutor lying and telling Juror's during Closing Arguments Defendant reason for having Shackles was for their safety.

2. I object to the False use and placement of handcuffs and Shackles to Defendant.

3. I object to Judge Nakahara not appointing Court Appointed Lawyer and not relieving Defendant of public Defender office After seeing misconduct Forcing Defendant to go pro-per.

001100

4. I OBJECT TO Judge Richman NOT USING Defendant Endorsed Filed proposed Jury instructions.

5. I OBJECT TO D.A And Judge using Defendant MENTAL HEALTH As Indicia in Case And NOT ordering psychiatric evaluation in Defendant decision being proper knowing Defendant suffers paranoid delusions.

6. I OBJECT TO D.A Burke TAKING shirt And Exhibit outside The Courtroom To witness out of presence of Jury during recess

7. I OBJECT TO Judge Richman Admonishing The Jury Telling Them D.A Burke Done Anything Improper TAKIng shirt And Exhibit outside The Courtroom.

8. I OBJECT TO The FAlse And Improper dismissal of Juror No.11 Gavidagini And NOT Answering his Question of Defendant being Frame.

9. I OBJECT TO Judge Richman NOT CALLING A MiStrial After Withholding Juror Question NO.11 Gavidagini As Defendant ASK instead of Answer Question Judge Richman Attempted A.w To excuse Said Juror.

10. I OBJECT TO Judge Richman NOT hearing 3 endorsed Filed July 31st Motions To Dismiss in Trial Courtroom.

0011[?]

11. I'M OBJECTING TO JUDGE RICHMAN IN 1538.5 HEARING NOT SUPPRESSING IDENTIFICATION FROM LINE UP OR RESULT OF.

12. I OBJECT JUDGE RICHMAN DID NOT RULE A ILLEGAL SEARCH AND SEIZURE IN 1538.5 HEARING WITHOUT VERNA EDWARDS TESTIMONY IN COURT OR APPEARANCE TO HER STATEMENT OF LETTING THE OFFICERS IN AND RULING ITEMS OF CLOTHING ILLEGALLY IN DEFENDANT TRIAL.

13. I OBJECT TO JUDGE RICHMAN NOT RULING IN 1538.5 HEARING MY RIGHT TO COUNSEL AT A PHYSICAL LINE UP APR 8TH 97

14. I OBJECT TO D.A BURKE TELLING THE JURY TO TRUST THE JUDGE SENTENCING DISCRETION AS OPPOSE TO DEFENDANT DRUG USE AND DRUG PROGRAM PLACEMENT.

15. I OBJECT TO JUDGE RICHMAN LETTING SGT. JUAREZ PERJURED TESTIMONY OF HIS IN COURT TESTIMONY AT 1538.5 HEARING OF A MISTAKE MADE WHEN SGT. JUAREZ STATED UNDER OATH 6-17-97 AT DEFENDANT PAROLE REVOCATION HEARING "WE DID A PHOTO LINE UP" ON TAPE AS JUDGE RICHMAN HEARD AND THERE WAS NO MENTION OF A MISTAKE BY SGT. JUAREZ ON THE TAPE WHICH WENT UNDOCUMENTED IN THIS CASE SEE TAPE IN EVIDENCE. SGT JUAREZ TESTIFIES IN PAROLE HEARING THIS PHOTO LINE UP OCCURED NITE OF PHYSICAL LINE UP BEFORE.

16. I OBJECT TO JUDGE RICHMAN NOT LETTING SGT. HOLOMAN AND SGT. BROCK TESTIFY AT DEFENDANT TRIAL BOTH OFFICERS WERE AT DEFENDANT PHYSICAL LINEUP APR 8, 97 AND WERE ISSUED SUBPEONA'S BY DEFENDANT INVESTIGATOR FOR TRIAL.

17. I OBJECT TO JUDGE RICHMAN NOT LETTING ME USE PITCHESS MOTION WITNESSES THAT JUDGE NAKAHARA GRANTED JULY 6TH 98 FROM INTERNAL AFFAIRS INFO ABOUT SGT. BROCK CHARACTER, CONDUCT PREVALENT TO DEFENDANT CASE WITHHELD FROM JURY.

18. I OBJECT TO JUDGE TELLING JUROR'S DURING JURY SELECTION AND VOIR DERE OF THESE WITNESSES DEFENDANT INTENDED CALLING INCLUDING PITCHESS WITNESSES AS WELL AS BROCK SGT. HOLOMAN SGT. THEN NOT ALLOWING DEFENDANT HIS RIGHT NOT TO PUT ON HIS CASE.

19. I OBJECT TO D.A BURKE USING Dr. STEVENS AND PAROLE AGENT LUDWIG WITHOUT INFORMING DEFENDANT OF THEIR SURPRISE CALLING.

20. I OBJECT TO JUDGE RICHMAN NOT ALLOWING ME TO RE SUBPEONA PAROLE AGENT LUDWIG OR WITNESS GUSTAVO CONTRERAS

21. I OBJECT TO D.A BURKE ADMONISHING JURY DURING CLOSING ARGUMENT DON'T FORGET HOW HE BEAT VERNA EDWARDS HEARSAY INFO NOT PERTAIN TO THIS CASE.

001103

22. I object to D.A Burke or Michael O'Connor not writing opposition motions for any of the 9 endorsed Filed Aug 11th 98 Motions to dismiss as Michael O'Connor Done Aug 11th 98 endorsed Filed 1538.5 Motion.

23. I object to court clerk Janet Drabbee denying Defendant Acess to the court and to File Affadault, Said grand motions Aug 17th 98 See Citizen Complaint.

24. I'm objecting to D.A Burke using a False Excerpts From Verna Edward Testimony during that cross examination Telling Juror's Defendant Made Admission where Defendant stated IF Any he Made a Mistake on that transcript Excerpts As Defendant stated.

25. I'm objecting to Judge Richman not giving Defendant Time to go over Juror Questionaires Knowing Alameda County Sherriff Deparment intentionally Withheld Them. See statement From Investigator Bruce Butler Endorsed File August 31, 98

26. I'm objecting To The Judges And Prosecutorial Misconduct which has Lead to a Illegal Conviction. False Imprisonment.

27. I object To Judge Richman Keeping My Marked evidence until Completion of Trial, denying Me The Right represent Myself Adequately.

28. That This be Made Apart of Transcript.

001104

## AFFIRMATION OF DEFENDANT

I, Antonio Williams, do hereby Affirm that The Foregoing representations Are True And Correct. I Made This Affirmation under penalty For perjury And based upon knowledge And belief.

Antonio Williams
ANTONIO WILLIAMS, AFFIANT

## CERTIFICATE OF SERVICE

I do hereby Certify That A True And complete Copy of Foregoing pleading has been served upon All parties of record by hand delivery in open court on The 20TH day of oct 98.

Antonio Williams
AL0822
ANTONIO WILLIAMS

NORTH COUNTY JAIL
550 6TH STREET
OAK, CALIF 94607

TO THIS AFFIDAVIT As A EXHIBIT here Endorsed
File ON Court records initialing 28 objections
FROM August 29th 98 TiL Sept 14th 98  Denying
Defendant Rights To AFair TriAL, Illegally
INCARCRATING Defendant intentionally.

### Affiration OF Defendant

I, Antonio WilliAms, do hereby AFFirm THAT
The Foregoing representations Are True
And Correct. I MAde This AFFirmAtion
under pendlty For perjury For perjury
And based upon Knowledge And Belief.

Antonio William AFFiAnt

Antonio williams

### Certificate OF Service

I do hereby Certify THAT A True And complete
Copy oF Foregoing pleading hAs been served
upon ALL pArties oF record by hand delivery
in open Court on The 30th dAy oF OCT 98.

Antonio William ALOBEE

Antonio Williams

001634

*Exh Φ"*

1　　　　　THE DEFENDANT:  WHAT ABOUT MY PROPOSED

2　INSTRUCTIONS?  YOU'RE USING HIS.  WHAT ABOUT MINE?

3　　　　　THE COURT:  THE ONE PROPOSED INSTRUCTION FROM

4　MR. WILLIAMS IS DATED AUGUST 31ST, 1998, DEALS WITH THE

5　CLAIMED RIGHT TO COUNSEL AT A LINEUP.  IS THAT THE ONE,

6　MR. WILLIAMS?

7　　　　　THE DEFENDANT:  YES.

8　　　　　THE COURT:  I'VE ALREADY INDICATED ON THE

9　RECORD, IN A VARIETY OF WAYS, AND I WILL INDICATE ONCE

10　AGAIN, THIS INSTRUCTION IS NOT APPROPRIATE.  THE ISSUE OF

11　ANY CLAIMED RIGHT TO COUNSEL AT THE LINEUP HAS BEEN RULED

12　ON IN PRETRIAL MOTIONS.  IT'S NOT A SUBJECT FOR THE JURY'S

13　INSTRUCTIONS.  I HAVE TOLD THE JURY THAT MANY TIMES,

14　CAUSED MANY TIMES BECAUSE OF THE VARIOUS STATEMENTS BY

15　MR. WILLIAMS THAT ARE INAPPROPRIATE.  SO THAT INSTRUCTION

16　IS NOT BEING GIVEN, FOR THAT REASON.  IT'S ALSO

17　ARGUMENTATIVE.

18　　　　BUT CERTAINLY, IT IS PART OF THE FILE, MR. WILLIAMS.

19　AND WHATEVER YOUR POSITION ON THAT IS, IT'S A POSITION

20　THAT'S MAINTAINED ON THE RECORD.

21　　　　　THE DEFENDANT:  IT'S YOUR POSITION TO DENY USING

22　MY PROPOSED SPECIAL INSTRUCTION BUT YOU ARE GOING TO USE

23　THE PROSECUTOR'S?

24　　　　　THE COURT:  THE ANSWER IS I'M REJECTING YOUR

25　SPECIAL INSTRUCTION.  I'M GIVING -- INCLINED TO GIVE THE

26　TWO SPECIAL INSTRUCTIONS, WHICH IS ALL I'VE GOTTEN FROM

27　THE PEOPLE.  ONE DEALS WITH THE RIGHT TO REPRESENT

28　ONESELF.  I'M SURE YOU'VE SEEN IT.  I'VE HEARD NO

1   OBJECTION TO IT.

2           THE DEFENDANT:  WE'RE JUST NOW TALKING ABOUT

3   THIS.

4           THE COURT:  NO, WE ARE NOT JUST TALKING ABOUT

5   ALL THIS.

6           THE DEFENDANT:  HE JUST GAVE ME HIS PROPOSED

7   SPECIAL INSTRUCTIONS LAST THURSDAY.  WE DIDN'T GO INTO ANY

8   OF THIS.  I'M SAYING, FOR THE RECORD, YOU'RE USING HIS BUT

9   NOT MINE.

10          THE COURT:  LET'S TALK ABOUT HIS.  THERE ARE TWO

11  YOU ARE AWARE OF?

12          THE DEFENDANT:  I'M ONLY AWARE OF ONE.

13          THE COURT:  ABOUT THE DEFENDANT IN A CRIMINAL

14  CASE HAS THE RIGHT TO REPRESENT HIMSELF.

15          THE DEFENDANT:  I'M NOT AWARE OF THAT.  I'M

16  AWARE OF THE ONE HE PASSED ALONG LAST THURSDAY IN REGARDS

17  TO HIS POSITION STATING ABOUT -- THAT'S THE ONLY PROPOSED

18  SPECIAL INSTRUCTIONS THAT I HAVE.

19          THE COURT:  WHAT IS HE REFERRING TO, MR. BURKE,

20  DO YOU KNOW?

21          MR. BURKE:  (MR. BURKE SHAKES HEAD.)

22          THE DEFENDANT:  THE ONE THAT HE GAVE ME

23  THURSDAY.

24          THE COURT:  WHAT DOES IT SAY?

25          THE DEFENDANT:  I DON'T HAVE IT RIGHT HERE RIGHT

26  OFFHAND.  HE KNOWS WHAT IT IS.  HE GAVE IT TO YOU.  ONE HE

27  FILED THURSDAY.  THURSDAY WOULD BE, WHAT?  THE 12TH.

28          THE COURT:  THE ONLY ONE I'M AWARE OF THAT

1  REFERS TO BANK EMPLOYEE MAY BE A VICTIM OF A ROBBERY.

2          THE DEFENDANT:  THAT'S THE ONE.

3          THE COURT:  WHAT IS YOUR POSITION ON THAT?

4          THE DEFENDANT:  MY POSITION IS THIS:  YOU'RE NOT

5  ALLOWING ME TO USE MY SPECIAL PROPOSED INSTRUCTIONS BUT

6  YOU ARE ALLOWING THIS MAN TO USE HIS.

7          THE COURT:  SO WHAT IS YOUR POSITION ON THAT

8  SPECIAL INSTRUCTION?

9          THE DEFENDANT:  I MEAN, I'M OBJECTING.  IF I'M

10  NOT ALLOWED TO USE -- NO, NO, NO, NO, YOU'RE ASKING ME.

11  I'M GOING TO FINISH.

12      IF YOU ARE NOT GOING TO ALLOW ME TO USE MY PROPOSED

13  SPECIAL JURY INSTRUCTIONS, HOW ARE YOU GOING TO LET HIM

14  USE HIS?  WHAT'S SO, WHAT'S SO UNDERSTANDING ABOUT HIS AND

15  WHAT'S SO NOT UNDERSTANDING ABOUT MINE?

16      LAW IS LAW.

17      YOU DIDN'T WRITE THE LAW.  THE LAW STATES THAT, WHAT

18  IT STATES ABOUT MY RIGHTS TO REPRESENTATION AT A LINEUP.

19  AND YOU'RE DENYING ME THE RIGHT TO USE IT.  YOU ARE

20  DENYING ME THE RIGHT TO USE IT, BY YOUR OWN STANDARDS, NOT

21  LAW, BY YOUR OWN PERSONAL BELIEF.  THIS HAS NOTHING TO DO

22  WITH LAW.

23          THE COURT:  ANYTHING FURTHER ABOUT THIS SPECIAL

24  INSTRUCTION FROM THE PEOPLE?

25          THE DEFENDANT:  SO YOU'RE TELLING ME -- HOLD ON.

26  SO YOU'RE TELLING ME, YOU'RE TELLING ME THAT I, I CAN'T

27  USE MY PROPOSED SPECIAL INSTRUCTION?

28          THE COURT:  THAT'S CORRECT.  I'M ASKING YOU NOW.

1    I'VE ALREADY RULED ON YOURS.  LET ME ADDRESS, FOCUS ON

2    HIS.

3              THE DEFENDANT:  I'M COOL, MAN.  I'M DONE.  I'M

4    DONE.

5              THE COURT:  DO YOU CONTEND THAT IT'S NOT AN

6    ACCURATE STATEMENT OF LAW?

7              THE DEFENDANT:  I'M DONE WITH IT, MAN.  YOU'RE

8    DOING WHAT YOU ARE GOING TO DO, MAN.  I'M GOING TO DO WHAT

9    I'M GOING TO DO, JUST LIKE YOU ARE GOING TO DO WHAT YOU

10   ARE GOING TO DO.

11             FOR THE RECORD, I DO HAVE SOME THINGS THAT I WANT TO

12   SUBMIT BEFORE THE JURY IS BROUGHT DOWN.  I HAVE SOME

13   THINGS THAT I'D LIKE TO SUBMIT FOR THE RECORD.

14             THE COURT:  NO, WE'RE NOT GOING TO DO THAT.

15   WE'RE GOING TO --

16             THE DEFENDANT:  YOU CAN'T STOP ME FROM FILING

17   ANYTHING.

18             THE COURT:  I CAN STOP YOU FROM PROLONGING THE

19   CASE.

20             THE DEFENDANT:  THIS IS NOTHING.  THEY'RE JUST

21   GOING TO BE SUBMITTED.

22             THE COURT:  THAT'S FINE.

23             THE DEFENDANT:  THEIR JUST COMPLAINTS AGAINST

24   YOU, WHAT YOU'RE DOING.

25             THE COURT:  SUBMIT THEM NOW.

26             THE DEFENDANT:  I HAVE TO WAIT FOR MY

27   INVESTIGATOR TO GET BACK WITH THE COPIES.

28             THE COURT:  WE'LL SEE YOU AT 1:30.  BE PREPARED

1    TO GO WITH THE JURY INSTRUCTION.

2              MR. BURKE:  JUDGE, I SUBMITTED TWO JURY

3    INSTRUCTIONS.  IT SEEMED YOU ARE PREPARED TO RULE ON ONE,

4    AS MODIFIED IT, ONE WORD.

5              THE COURT:  I'VE CHANGED THE WORD.  AND THE

6    OTHER ONE.

7              MR. BURKE:  I'VE --

8              THE COURT:  HE SAYS HE HASN'T GOTTEN IT.

9              MR. BURKE:  I'VE FILED AND GIVEN HIM GIVEN IT TO

10   HIM.

11             THE COURT:  THAT'S THE OTHER ONE.

12             THE DEFENDANT:  WHAT ABOUT THAT?

13             THE COURT:  THAT'S YOUR OTHER INSTRUCTION.

14        WHAT'S YOUR VIEW ON THIS?

15             THE DEFENDANT:  I'M GOING TO OBJECT BECAUSE YOU

16   DENIED MINE.

17             THE COURT:  THERE IS NO RULE THAT SAYS YOU DENY

18   THIS, THEN DENY THAT.  WHAT IS YOUR POSITION AS TO THIS

19   SPECIAL INSTRUCTION?

20             THE DEFENDANT:  LET ME OUT OF HERE.

21             THE COURT:  MR. WILLIAMS, DO YOU OBJECT OR NOT?

22             THE DEFENDANT:  I EXPLAINED TO YOU, OVER AND

23   OVER, I'M OBJECTING TO THE FACT YOU ALLOWED THE PROSECUTOR

24   TO USE HIS PROPOSED SPECIAL INSTRUCTIONS AND DISALLOWED ME

25   TO USE MINE.  THAT'S MY POSITION.  AND I HAVE A RIGHT TO

26   STATE MY POSITION.  I'M OBJECTING TO THAT.  AND I THINK

27   THE JURY SHOULD KNOW THAT AS WELL.

28             THE COURT:  WELL, THE COURT'S POSITION IS THAT

1    THE SPECIAL INSTRUCTION THAT DEALS WITH THE RIGHT OF THE

2    DEFENDANT TO REPRESENT HIMSELF APPEARS TO BE AN ACCURATE,

3    STRAIGHTFORWARD, NONARGUMENTATIVE.

4          THE DEFENDANT:  FOR THE RECORD, I'M GOING TO

5    MAKE SURE THEY HEARS MINE AS WELL.  FOR THE RECORD, I'M

6    GOING TO MAKE SURE THE JURY HEARS MINE AS WELL.

7          THE COURT:  NO, YOU ARE NOT GOING TO DO THAT,

8    MR. WILLIAMS.

9          THE DEFENDANT:  MR. JAMES KU KLUX KLAN RICHMAN.

10          (DEFENDANT LEAVES COURTROOM)

11          THE COURT:  WHAT DID HE SAY?

12          MR. BURKE:  MR. JAMES KU KLUX KLAN RICHMAN.

13          (NOON RECESS)

14          ---000---

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"R"
Exhibit

000174

ADDITIONAL INFORMATION REPORT

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

RD # 97-27737

| NAME Robbery | [ ] SUPPLEMENTAL 211 P.C. | INCIDENT # | V1 | VICTIM LAST, First, M.d. |

SUSPECT LAST, First M.d.

INCIDENT LOCATION 3241 Lakeshore

DATE OF THIS REPORT 9 APR 97

ORIGINAL DATE REPORTED

PROPERTY (and/or NARRATIVE)
ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC

ITEM #    QNTY.    SERIAL #    VALUE

On 8Apr97, 1830 Hrs. I went to the jail to put together a physical line-up, which would include Antonio Williams AKA. James Johnson. I had been advised earlier by the jail supervisor, Sgt. R. Stewart, that Williams had stated he was not going to willingly attend the line-up. Sgt. Stewart explained to Williams that he would draw attention to himself if he had to be physically forced to attend the line-up. Sgt. Thurman had also been to the jail and advised Williams that it would be best if he attended the physical line-up without having to be forced. Sgt. Hollomon also did the same. Williams even stated we would have to fight him to get him to attend and he would do whatever he had to do if anyone tried to force him to do anything. Sgt. Brock and I went to the jail and also tried to convince Williams to willingly comply, but he still refused. I handcuffed Williams and tried to walk him throughout the jail to pick his fillers. He refused to pick any fillers. He was brought back to the area near his cell, and we attempted to pick his fillers. Williams was insisting we were setting him up and he wanted a lawyer to witness the line-up. We explained to him he did not have the right to have a lawyer as present as he was not charged with the crime he was being lined up for. He was so insistent, an attempt was made to contact the public defenders office, but there was no one present. He stated he wanted to see the law in "black and white." I showed him the Point of View issued by the Alameda County District Attorney's Office, which cited the case law. Williams was not satisfied and was still screaming at the other people who agreed to attend and intimidating them to refuse. We were unable to get any other prisoners to attend. We began to arrange for police officers in civilian clothing to stand in the line-up, when Williams told me he would comply but he wanted to pick his own fillers. Up to this point he was very hostile, yelling and threatening to resist with force from standing in the line-up. Williams picked his fillers.

The physical lineup was held at the Oakland Police Department Lineup Room. The line was comprised of the following people selected from the general population of the Oakland City jail.

Lineup:

| | | | |
|---|---|---|---|
| 1- | Scott, Markell | MB | |
| 2- | Everett, Milton | MB | |
| 3- | Johnson, James | MB | AMW667 |
| 4- | McGowan, Andrew | MB | ALQ822 |
| 5- | Copes, Eugene | MB | UIB399 |
| 6- | Richardson, Antonio | MB | UHY450 |
| | | MB | AQS167 |

SERIAL #    WATCH    DISTRICT    SUPERVISOR    SERIAL #

170-401 (REV. 12/94)

**MUNICIPAL COURT FOR THE**  OAKLAND-PIEDMONT  **JUDICIAL DISTRICT**

001450

**COUNTY OF ALAMEDA, STATE OF CALIFORNIA**

## CLERKS DOCKET AND MINUTES

| | | | | |
|---|---|---|---|---|
| 1 DOCKET NAME | WILLIAMS, ANTONIO NMN | | DEPT. 06 | CRT. DATE/TIME 6/26/97  09 |
| 2 EVENT NAME | JOHNSON, JAMES NMN  *Exhibit* | | RPT. NO. | DOCK NO. 42123 |
| 3 PROC. PX | | CEN. 7144079 | PFN ALQ822  A DAY 04/11/97  SJ DATE 1/02, | |
| COUNTS | | | PIC 00S00  AAG-SO  ACITY DA | |
| 4 CHARGES | 1)F211 PC | | | |
| | 2)F211 PC 9 PRS | | | |

STAT  SET  BAIL $40,000.00    TOTAL DAYS IN CUSTODY: 75

| | | | |
|---|---|---|---|
| 5 BAIL ___ | STAT. ___ | BOND DT. ___ | BOND CO. ___ DOB 01/12/5 |
| BAIL ___ | STAT. ___ | BOND DT. ___ | BOND CO. ___ |
| 6 FINE/REST. ___ | DATE PAID ___ | REC. NO. ___ | TIME WAIVED NTW 5/22/97  BAC ___ |

## PROCEEDING

| | |
|---|---|
| 7 JUDGE MARSHALL I. WHITLEY  Zika | DEP. D.A. ___ |
| 8 DEP. CLERK BRENDA DAVIS  mclwo | DEF. ATTY. PD SYREN  BROUSSARD |
| 9 REPORTER Jean Witham 8243 | OTHERS ___ |
| IN CUSTODY | |

DEF. PRESENT (YES)  NO  EXCUSED  (circle one)    ATTY. PRESENT (YES)  NO  PRO PER    TIME NOT WAIVED    TIME WAIVER WITHDRAWN

TIME WAIVED FOR  PRELIM. EXAM  TRIAL  SENTE

WAIVER OF RIGHTS SIGNED AND FILED
( )YES ( )NO ( )ORAL

FIN INELIGIBLE FOR P.D. ___
( )SLIO/SRRO ___
CHARGE ___

Ref. to P.D.

PLEA OF: ( ) NOT GUILTY  ( ) GUILTY
( ) NO CONTEST/FOUND GUILTY
( ) PURSUANT 23103.5 V.C.  ( ) ADMITS PRIORS
( ) PRIOR(S) STRICKEN/SPO  ( ) ADMITS CLAUSES

## MOTIONS MADE

( )ORAL  ( )WRITTEN
BY  PEOPLE DEFENSE STIPULATION PRO-PER
( )BAIL REDUCTION ( )DISMISS ( )OR

( )GRANTED  ( )DENIED  ( )DROPPED
( )SUBMITTED  ( )CONT'D  ( )WITHDRAWN

## BENCH WARRANT

ORDERED FOR ___
BAIL $ ___
ISSUED BY ___
DATED ___
BW RETURN OR W/D ___
HOLD UNTIL ___

## BAIL STATUS

( )BF    ( )CONT. TO SJ DATE
BF OF ___ SET ASIDE
BAIL EXONERATED ___
BAIL REINSTATED ___
SJ ENTERED ___
SURRENDERED ___ YES ___ NO ___

( )DULY ARRAIGNED/ADVISED ON CONSTITUTIONAL RIGHTS ( )WAIVES ARRAIGNMENT ( )HANDED COPY OF COMPLAINT ( ) DISCOVERY ( )AMENDED ( )PET

( )REF TO PROB: REST ONLY/DIV/PRE PLEA ( ) COND SENT ( ) FORM PROB ( ) REV ( ) HG WAIVED ( ) VIOLATION ADMIT / FOUND
( ) REINSTATED SAME T & C ( ) MODIFIED ( ) TERMINATED

*PD not ready for PX - Def was not dressed out*

*People ready*

→ * *Identification is the issue in this case* - Def is to dressed on 6/3-*

*Witnesses Gustavo Contreras + Rizalino Patajo are ordered to*

*appear to DA office at 8:30 AM on 6/30/87 at absence of De*

( )ADVISED 987.8 PC ( )O.R. ADVISEMENT ( )DEFENDANT EXCUSED ( )MUST APPEAR AT NEXT COURT DATE

( )REFER TO FHO ( )ADVISED 1016.5 (a) PC ( )SEARCH & SEIZURE ( )4 WAY ( )3 WAY ( )SEE ORDER

## CONTINUATION RECORD

DATE 6-30-97
TIME 0900
DEPT. 6
PROC. PX
DOCKET NAME  JOHNSON, JAMES NMN

| AA | DB | TQ | QU | CR |
|---|---|---|---|---|
| DA | DU | QA | VW | QH |
| EP | FF | QC | WG | UG |
| DB | DT | TR | AQ | UJ |
| DY | SB | QK | UH | KA |

## DISPOSITION

CT. DATE 6/26/97    DOCK NO. ___ 421239

*Exh S* BMBI

BRUCE M BUTLER INVESTIGATIONS

1140 Broadway, Suite 202
Oakland, California 4612
510/465 BMBI (2624)
800/420-BMBI (2624)

License #PI9905
EMAIL:BMBI84@AOL.COM

Mailing Address:
P.O. Box 10083
Oakland, CA 94610-0083
Fax 510/658-6541

September 14, 1998

Case: People v. Antonio Williams PFN:ALQ 822
Docket # 130594

Conducted by: Bruce M. Butler
Alameda County Court Appointed Investigator

Defendant stated the following:

. Judge Richman in Department 5, denied defendant the right to have Oakland
Police officers Brock and Rollman to testify in trial. These officers were
stated that these officers had relevant information concerning his case.

. Judge Richman denied the defendant the right to re-subpoena Parole Officer
Hedwick and witness Gustavo Contreras. Defendant stated that these individuals
had relevant information concerning his case.

. Judge Richman did not use the defendants jury instructions. Defendant
submitted his jury instructions, which were endorsed by the court clerk, and
the District Attorney submitted his own jury instructions. Judge Richman
accepted the Districts Attorneys instructions and not his.

Signed:

Date: September 14, 1998

ENDORSED
FILED
ALAMEDA COUNTY

APR 26 1999

CLERK OF THE SUPERIOR COURT
By A. Yvonne Bazzell, Deputy
E Opelski-Erickson

SHORT TITLE:

CASE NUMBER:

## PROOF OF SERVICE OF SUBPENA

1. I served this  ☒ Subpena   ☐ Subpena Duces Tecum and supporting affidavit   by personally delivering a copy to the person served as follows:

   a. Person served (name): *Sgt Holloman Via Court Litton Office*

   b. Address where served: *5th Sther*
      *Oak Land, CA*

   c. Date of delivery: *9-8-98*
   d. Time of delivery: *10-20-AM*

2. I received this subpena for service on (date): *9-7-98*

3. ☐ **NON-SERVICE RETURN OF SUBPENA**

   a. ☐ After due search, careful inquiry, and diligent attempts at the dwelling house or usual place of abode or usual place of business, I have been unable to make personal delivery of this ☐ Subpena   ☐ Subpena Duces Tecum in this county on the following persons (specify):

   b. Reason:
   (1) ☐ Unknown at address.
   (2) ☐ Moved, forwarding address unknown.
   (3) ☐ No such address.

   (4) ☐ Out-of-county address.
   (5) ☐ Unable to serve by hearing date.
   (6) ☐ Other reasons (explanation required):

4. Person serving:
   a. ☐ Not a registered California process server.
   b. ☐ California sheriff, marshal, or constable.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.

   e. ☒ Exempt from registration under
      Bus. & Prof. Code section 22350(b).
   f. Name, address, and telephone number and, if applicable, county of registration and number:
      *Billie M. Butler*
      *1440 Broadway, #202*
      *Oakland, CA 94612*
      *(510) 465-2624*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: *9-8-98*

► _____
(SIGNATURE)

**(For California sheriff, marshal, or constable use only)**
I certify that the foregoing is true and correct.

Date:

► _____
(SIGNATURE)

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## PROOF OF SERVICE OF SUBPENA

1. I served this ☒ Subpena  ☐ Subpena Duces Tecum and supporting affidavit  by personally delivering a copy to the person served as follows:

   a. Person served (name): B. Breck 7882 via Co000 Liason office OPD

   b. Address where served: 1520 5TH ST
   OPD C400, CA

   c. Date of delivery: 9-8-97
   d. Time of delivery: 10:20 A.M.

2. I received this subpena for service on (date): 9-7-98

3. ☐ **NON-SERVICE RETURN OF SUBPENA**

   a. ☐ After due search, careful inquiry, and diligent attempts at the dwelling house or usual place of abode or usual place of business, I have been unable to make personal delivery of this ☐ Subpena  ☐ Subpena Duces Tecum in this county on the following persons (specify):

   b. Reason:

   (1) ☐ Unknown at address.
   (2) ☐ Moved, forwarding address unknown.
   (3) ☐ No such address.

   (4) ☐ Out-of-county address.
   (5) ☐ Unable to serve by hearing date.
   (6) ☐ Other reasons (explanation required):

4. Person serving:

   a. ☐ Not a registered California process server.
   b. ☐ California sheriff, marshal, or constable.
   c. ☐ Registered California process server.
   d. ☐ Employee or independent contractor of a registered California process server.

   e. ☒ Exempt from registration under
   Bus. & Prof. Code section 22350(b).

   f. Name, address, and telephone number and, if applicable, county of registration and number:
   Bruce M. Buren
   1440 Broadway #202
   Oakland, CA 94612
   (570) 465-2624

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 9-8-98

▶ _____
          (SIGNATURE)

(For California sheriff, marshal, or constable use only)
I certify that the foregoing is true and correct.

Date:

▶ _____
          (SIGNATURE)

982(a)(16) [Rev. January 1, 1991]

**PROOF OF SERVICE OF SUBPENA**
(CRIMINAL OR JUVENILE)

5925 Broder Blvd
Dublin, CA 94566
pro-per

ENDORSED
FILED
ALAMEDA COUNTY

AUG      1998

RONALD G. OVERHOLT, Exco. Off/Clerk
By Adrienne Palmer

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE
OF CALIFORNIA,

     Plaintiff,

v.

ANTONIO WILLIAMS

     Defendant.

_____/

Dept. No: 7

No: 130594

## DEFENDANT'S PROPOSED SPECIAL INSTRUCTION

You are instructed that the holding of the lineup in this case without counsel to represent the defendant was in violation of defendant's right to counsel guaranteed by Article I, §15 of the California Constitution. The absence of counsel may be considered by you in deciding whether the identification of defendant by any witnesses who were present at the lineup are accurate. There may have been suggestive actions at the lineup causing an erroneous identification which could have been recorded if counsel had been present. Also, defendant's attorney would be better able to cross-examine the lineup witnesses at trial and to prepare for final argument. Although you are not required to do so, you may infer that the absence of counsel at the lineup raises a reasonable doubt of any identification of defendant by any witnesses who were present at the lineup and you should view the testimony of such witnesses with caution.

People v. Bustamante (1981) 30 Cal.3d 88.

Raven v. Deukmejian (1990) 52 Cal.3d 336, 354.

People v. Zamora (1980) 28 Cal.3d 88.

People v. Wimberly (1992) 5 Cal.App.4th 773, 792-794.

People v. Fernandez (1990) 219 Cal.App.3d 1379, 1384-1385.

DATED. 8-21-98

Antonio Williams
Pro-per

JOHN J. MEEHAN
District Attorney
County of Alameda
900 Courthouse
1225 Fallon Street
Oakland, CA 94612
(510) 272-6222

Daniel R. Burke
Deputy District Attorney


SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE OF CALIFORNIA    )
                                         )    No. 130594
v.                                       )
                                         )    Dept. No. 5
                                         )
JAMES JOHNSON AKA ANTONIO WILLIAMS,      )    Date: 9/10/98
                                         )
                              Defendant. )    Time: 9:00


PEOPLE'S PROPOSED SPECIAL JURY INSTRUCTION


A BANK EMPLOYEE MAY BE THE VICTIM OF A ROBBERY EVEN THOUGH HE OR
SHE ITS OWNER AND NOT AT THE MOMENT IN IMMEDIATE CONTROL OF THE
STOLEN PROPERTY.


See People v. Jones at 42 Cal.App.4th 1047


        Dated: 10 SEPTEMBER 1998


                              THOMAS J. ORLOFF
                              District Attorney

                              By:

                              DANIEL R. BURKE
                              Deputy District Attorney

OFFICE OF
STRICT ATTORNEY
ALAMEDA COUNTY
CALIFORNIA

1

" Exhibit T " 1627

1   AFFAIRS IS OPEN TO SOME POSSIBLE OR IMAGINARY DOUBT.  IT

2   IS THAT STATE OF THE CASE WHICH, AFTER THE ENTIRE

3   COMPARISON AND CONSIDERATION OF ALL THE EVIDENCE, LEAVES

4   THE MINDS OF THE JURORS IN THAT CONDITION THAT THEY CANNOT

5   SAY THEY FEEL AN ABIDING CONVICTION OF THE TRUTH OF THE

6   CHARGE.

7        THE BURDEN IS ON THE PEOPLE TO PROVE BEYOND A

8   REASONABLE DOUBT THAT DEFENDANT IS THE PERSON WHO SUFFERED

9   THE PRIOR FELONY CONVICTIONS WITH WHICH HE IS CHARGED.

10        IF, AFTER CONSIDERING THE CIRCUMSTANCES OF THE

11   IDENTIFICATION AND ANY OTHER EVIDENCE IN THIS CASE, YOU

12   HAVE A REASONABLE DOUBT WHETHER DEFENDANT WAS THE PERSON

13   WHO SUFFERED THE PRIOR FELONY CONVICTIONS, YOU MUST GIVE

14   THE DEFENDANT THE BENEFIT OF THAT DOUBT AND FIND HIM NOT

15   GUILTY.

16        THE DEFENDANT ANTONIO WILLIAMS WAS ACCUSED IN THE

17   INFORMATION OF HAVING VIOLATED SECTION 211 OF THE PENAL

18   CODE AND YOU, THE JURY, HAS NOW RETURNED A VERDICT AS

19   GUILTY AS TO THAT PARTICULAR CHARGE.

20        IT IS ALSO ALLEGED IN THE INFORMATION THAT THE

21   DEFENDANT PREVIOUSLY HAS BEEN CONVICTED OF CERTAIN

22   FELONIES, TO WIT:

23        (1) FIRST PRIOR CONVICTION, (SECTION 667(A) OF THE

24   PENAL CODE) THAT ANTONIO WILLIAMS, ON OR ABOUT THE 21ST

25   DAY OF DECEMBER, 1993, WAS CONVICTED IN THE SUPERIOR COURT

26   OF THE STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF

27   ALAMEDA, OF THE CRIME OF FELONY, TO WIT:  ROBBERY, A

28   VIOLATION OF SECTION 211 OF THE PENAL CODE OF CALIFORNIA,

1  YOU THAT IT WAS OTHER PEOPLE FROM ANOTHER BANK, TWO OTHER

2  BANKS, THAT WERE DOWN AT THIS LINEUP, AS WELL AS THIS ONE,

3  THEY DIDN'T TELL YOU THAT, HUH?

4  A.   I CAN'T SAY THAT I ACTUALLY REMEMBER HAVING A

5  CONVERSATION WITH THEM ABOUT THAT, SO I HAVE TO SAY, NO.

6  BUT IT DOESN'T MEAN THEY DIDN'T TELL ME.  I JUST DON'T

7  REMEMBER.

8  Q.   IF I SHOW YOU A PIECE OF PAPER, WOULD IT REFRESH

9  YOUR MEMORY?

10  A.   ABOUT WHAT?

11  Q.   MR. YOELL, YOU INTERVIEWED OTHER SUSPECTS IN REGARDS

12  TO THIS CASE, RIGHT?

13  A.   NO.

14  Q.   YOU DIDN'T?

15  A.   I DON'T BELIEVE SO.

16  Q.   DID YOU HEAR ABOUT ANY OTHER SUSPECTS IN THIS CASE?

17  A.   NO.  I THINK YOU'RE THE ONLY ONE.

18       THE DEFENDANT:  I'D LIKE TO SAY THIS MAN IS

19  LYING.

20       HERE, WOULD YOU SHOW HIM THIS?  I'M GOING TO

21  UNDERLINE IT FOR YOU.  SGT. YOELL INTERVIEWED ANOTHER

22  SUSPECT IN THIS CASE.

23       MR. BURKE:  I THINK WHAT THE DEFENDANT IS TRYING

24  TO DO IS CONFUSE THE JURY.  THERE WAS A SEPARATE AMERICAN

25  SAVINGS BANK SUSPECT WASN'T CHARGED WITH --

26       THE DEFENDANT:  I ASKED THE QUESTION ANY OTHER

27  SUSPECT IN THE CASE.  HE SAID NO.

28       MR. BURKE:  IT'S VAGUE WHICH CASE HE IS TALKING

DATE:                    97-27737                1
                                                          000243

American Savings Bank            " $E \times h \, \nu$ "

Robbery 211 P.C ,                                         Bank

          26Mar97                              $1105.00

  SUSPECT:                        MB 27 Yrs        CEN:        PFN:


26Mar97     I/O received, reviewed and logged report.  The suspect had walked
            in to the bank and handed the teller a note.  It stated,"I have a
            gun, give me the money".  The suspect received about $1105.00 and
            fled the bank.  I talked with FBI Agent Jerry Webb, and he stated
            the bank had an 8mm camera and the film was sent to be developed.


 1400       I received a call from Webb and he stated he received the photos.
            He dropped them off to me.  I ordered wanted photos from the
            photo lab.  The description appears to be the same as RD# 97-
            27908, a robbery at Bank of the West, 2000 Franklin St.

27Mar97     Sgt. Yoell recognized the suspect to look very similar to Marvin
0940        Ward, AIE176.  Sgt. Yoell, Sgt. Mestas, Ofc. Galindo and I went
            to 3123 Coolidge Ave, Ward's CORPUS address.  Ward came outside
            and was detained in the driveway.  His girlfriend of 16 years,
            who he lives with at 3123 Coolidge, signed a consent to search
            form and agreed to let us search the home.  No evidence was found
            linking Ward to the robbery.  His girlfriend, Charlotte McDuffy,
            gave a statement stating the picture resembles Ward, but it is
            not him.  Ward stated he has three living brothers, Darryl Ward,
            34-35 Yrs, Anthony Ward, 30 yrs, with a DOB around August 2nd,
            and Robert Lee Ward, 42 yrs, with a DOB around September 26th.
            They all live in Sacramento on Brockhurst St., 916-365-8173.
            Upon looking at Ward in person, he does not appear to be the
            suspect.

28Mar97     Sgt. Yoell received a call from a person who wished to remain
1040        anonymous.  The person stated the suspect was Carl.  She stated
            she saw his picture in the paper.  She gave an address of 1827
            62nd St., Berkeley.  I checked the address in RMS and it showed
            an occupant of Rakim Washington.  He is on probation and has a 4
            way search clause.  Sgt. Yoell and I went to the address with
            several other officers and conducted a probation search.  I found
            the identification for Carl, who has a true name of Carl Lamar
            Wilson, 24Jun66, 6-0, 240, Soc. 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.  He does not fit the
            description of the suspect and he does not look like him in the
            photo.  He does not appear to be the suspect.

000244

1Apr97    I received a message from Ofc. Greg Kilpatrick, CHP, 450-3845,
0845      pgr. 415-708-6493. He stated he is working on a 245 case, where
          the suspect is Kevin Ross, ATM266. He talked with the suspects
          ex-wife, who believes Ross may be the same person who was
          responsible for the bank robberies, as she saw the photo in the
          paper. I pulled a copy of Ross' PFN photo, and he is a possible
          suspect. He is on probation and has an S-7 search clause. I
          called and left a message for Kilpatrick.

1400      I received a call from Kilpatrick, who stated he is flagging the
          mail being delivered to his sister's home, 2727 Marina #212, San
          Leandro, 483-5967. His sister has a name of Allison Thompson.
          He stated he is actively pursuing Ross and will call me before he
          picks him up. He stated he has driven by 1815 Linden St., but he
          has not seen the suspect vehicle, Hond Acc Tan, parked there. He
          believes the suspect is not living there. He requested I not go
          to the house until he can confirm where the suspect is located.
          He is concerned Ross may go in to hiding if he believes the
          police are looking for him. He gave pager numbers for Ross of
          430-4711, 884-2174 and 977-2869. He also stated Ross has a cell
          phone number of 540-5452.

1645      Jerry Webb advised he had received an anonymous call stating the
          suspect is Rodney Womack. I checked the CORPUS record on Womack
          and called CDC. He has been in prison since November 1994.

1715      I was monitoring radio and heard that a person matching the
          suspects description had left the Wells Fargo at 1221 Broadway.
          The suspect looked like a photo the bank had of the suspect.
          Ofc. Robinson stopped the suspect, identified as James Helms,
          28Jan70, AVB259. He stated Helms looked like he could be the
          suspect in the photo. Helms also had an outstanding bench
          warrant and was transported to Robbery Section.

2030      Sgt. Yoell and I interviewed Helms. I admonished him and he
          agreed to talk with us. He denied any knowledge of the
          robberies, although he acknowledged the suspect photo did look
          like him. He stated he has recently started working for Starving
          Students moving company, and he was on a job Thursday, 27Mar97,
          all day. He stated he arrived at work about 0700 Hrs., went to
          Concord, Walnut Creek and South San Francisco and returned about
          2100 Hrs. He stated he was with two other people. He gave the
          name of Lynette as his supervisor. One of the robberies where we
          have a photo of the suspect occurred 27Mar97, 1040 Hrs. Helms
          gave us consent to search his home for evidence. We went to his
          home, 841 Milton, but were unable to conduct a search because of
          2 Rottweillers in the front yard.

2228      Helms was taken to the jail on his warrant.

3Apr97    I talked with Lannette Lawson, 547-0324, of Starving Students.
0930      She agreed to find the work records for 27Mar97 and show them to
          me. I met her at 963 61st St. and looked at the records. It
          showed Helms was with G. Henderson and R. Maniwhether on a moving
          job. They arrived in Concord about 0845 Hrs. then went to Walnut
          Creek and San Francisco. They did not return until about 2030
          Hrs. This corroborated Helms' comments about his whereabouts,
          and eliminates him as a suspect at this time.

1330      I completed a latent fingerprint processing request on the note
          recovered from American Savings.

6Apr97    Antonio Williams, who has a CORPUS name of James Johnson, was
1936      arrested by Sgt. Bingham for battery on his brother, Mark
          Williams. M. Williams gave a statement stating he wanted his
          brother, A. Williams arrested for battery. He also stated he saw
          the article in the Tribune showing the bank robbery suspect, and
          he asked A. Williams if it was him. He stated he had taken over
          $5000.00.

1935      A. Williams was transported to Robbery Section and placed in an
          interview room.

2055      Williams was not interviewed due to his hostile nature and was
          taken to the city jail.

          Sgt. Thurman and Sgt. Aguirre were called out and conducted some
          follow-up investigation work. See Sgt Aguirre's supplemental
          report which documents the work they completed.

pr97      Sgt. Yoell and I picked up Williams from the jail and took him to
014       CID, Rm #238.

1019      Sgt. Yoell and I entered the room to interview Williams.
          Williams was admonished and agreed to give a statement, which was
          taped. He stated he does not own a baseball cap and never wears
          one. He stated the person in the picture is not him. He also
          stated he does not have a tan or white colored jacket, like the
          one in the photo.

1500      I talked with Shui Ann Ma, the teller at American Savings Bank,
          and she stated she would be at the line-up April 8, 1830 Hrs..

1505      I talked with Tina Brown, a witness from American Savings Bank,
          and she agreed to come to the line-up.

1508      I talked with Jose San Augustin, the teller from Bank of the
          West, RD# 97-27908. He agreed to come to the line-up.

1515      I talked with Gustavo Contreras, the teller from Mission National
          Bank, RD# 97-28469. He agreed to come to the line-up. He stated

he would inform Akira Mendoza and Rizalino Patajo, the witnesses
from the bank.  If they could not make it he would call.

1550    Sgt. Thurman and I went to 955 8th St. to conduct a parole
        search, but there was no answer at the door.  It appears there
        was no one home.

1600    Sgt. Thurman found an arrest from April 1, 1997, where Williams
        was arrested IFO 444 W. MacArthur Blvd.  We went to The Imperial
        Inn to see if they had a record of Williams staying there.  They
        did not.  I pulled a copy of the report, 97-30245, and it states
        Williams was wearing a baseball cap when he was arrested.  This
        would contradict his statement about not wearing baseball caps.

8Apr97   DDA Platt reviewed the 242 report and charged Williams with 242
0930     P.C.

1055    Judge Wheatley signed a removal order, which I delivered to North
        County Jail.  I explained to them that Williams would be going to
        court and then would be turned over to them.

1700    Sgt. Thurman and I picked up Williams from North County and
        delivered him to the City Jail.  See Supplemental report for
        results of Line-up.

2130    Sgt. Thurman and Sgt. Yoell interviewed Williams.  See Sgt.
        Thurman's supplemental report on the interview.

9Apr97   I contacted Agent Ludwig, Williams' parole officer, and advised
        him Williams had been identified in the line-up.  I made him
        copies of the police reports and placed them at the receptionists
        desk for him to pick up.