IN THE U.S. DISTRICT COURT NORTHERN
DISTRICT OF CALIF

FILED
AUG - 6 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ANTONIO LUIS WILLIAMS

VS

W.J. SULLIVAN "WARDEN"

CASE NO. C07-3376CW

MOTION For
EVIDENTIARY
HEARING in support
of PETITION, CLAIMS
THE INTRODUCTION
of NEW EVIDENCE
of ACTUAL INNOCENCE,
MISSCARRIAGE of
JUSTICE AND ARE
FEDERALIZE CLAIMS
AND REQUESTING
THE COURT HEAR
UNDER PEOPLE V.
LLOYD SCHLUP 513
US 298, 130 L Ed 2d
808, 115 S CT 851

NC

PETITIONER come RESPECTFULLY beFore THE
COURT WITH MOTION For EVIDENTIARY HEARING
UNDER TITLED INFO in THAT He is ACTUAL
INNOCENCE, CONVICTED SOLELY BY MISSCARRIAGE
of JUSTICE, ILLEGALLY INCARCARATED BY NO
AND REQUIRES HIM TO BE RELEASED From
STATE CUSTODY AND A EVIDENTIARY HEARING BE-
held For FOLLOWING SAID REASONS including:

(1.) PETITIONER is INCARCARATED, in CUSTODY in VIOL-
ATION OF THE CONSTITUTION AND OR LAWS TREATIES
of THE UNITED STATES ROSE VS HODGES 423 US
19, 21 (1975)

(2.) PETITIONER BOUGHT THESE CLAIMS Feb, 06
TO OAKLAND SUPERIOR COURT UNDER NEW
EVIDENCE CLAIMS in PETITION

1.

IN PETITION FOR WRIT OF HABEAS CORPUS ALSO SUBMITTED ALONG ENC WITH IT WAS A MOTION FOR EVIDENTIARY HEARING, A MOTION FOR APPOINTMENT OF COUNSEL, MOTION REQUESTING ORDER BE ISSUED, MOTION TO DISQUALIFY AND OR RECUSE SUPERIOR COURT JUDGE LARRY GOODMAN FROM HEARING THIS PETITION BY CONFLICT OF INTEREST DUE TO HIM BEING THE PRESIDING PRETRIAL JUDGE + A 170.6 CHALLENGE MOTION WAS BOUGHT AGAINST HIM BY PETITIONER, ON FEB 28,06 OAKLAND SUPERIOR COURT JUDGE LARRY GOODMAN DENIED THE PETITION FOR WRIT OF HABEAS CORPUS IGNORED RULING ON THE MOTIONS MANIPULATING THE RECORD, CIRCUMVENTING THE RECUSAL, DISQUALIFICATION MOTION AND BY SO BLATLY DENIED PETITION INSUPPORT OF THESE FACTS SEE EXHIBIT A ALL ATTACHES

(3.) IN APR. 06 PETITIONER BOUGHT THESE SAME CLAIMS, INFO TO COURT OF APPEAL AFTER IT RECUSED ITSELF APR 27,06 BY CONFLICT OF INTEREST AND ON MAY 5,06 THIS PETITION WAS DENIED BLATLY SEE EXHIBITS B,C COURT ORDERS.

(4.) PETITIONER SUBMITTED HIS PETITION FOR REVIEW OF SAID PETITION TO SUPREME COURT OF CALIF

2.

ON MAY 23,06 IT WAS RECEIVED MAY 26,06 THE CLERK RETURN WITHOUT FILING STATING IT WAS UNTIMELY SUBMITTED ALLEGING I ONLY HAD 10 DAYS SEE EXHIBIT D LETTER OF MAY 26,06

15.1 PETITIONER RESUBMITTED HIS PETITION FOR REVIEW OF HIS HABEAS CORPUS BACK TO CALIF SUPREME COURT INFORMING IT IT APPROVED NOT FILING THE PETITION FOR REVIEW OF HABEAS CORPUS IT STATED IT RECEIVED IT JUNE 2,06 AND IT LOST JURISDICTION ON JUNE 5,06 TO NOW ACT ON PETITION FOR REVIEW SEE EXHIBIT E JUNE 12,06 LETTER

16.1 PETITIONER STATES HIS CLAIMS INVOLVES EVIDENCE OF A UNDOCUMENTED PHOTOGRAPHIC LINE UP THAT OAKLAND POLICE OFFICERS USED TO FRAME PETITIONER ILLEGALLY INCARCARATE HIM BY PRESENTING IT APR 8,97 TO WITNESSES BEFORE A PHYSICAL LINE UP SETTING ME UP TO BE IDENTIFIED AS THE ASSAILANT AND ONCE EXONERATING EVIDENCE BECAME DISCOVERABLE ALAMEDA CO. PUBLIC DEFENDER

3.

Michael McCormick submitted a motion to dismiss this case for the presentation of the undocumented photo lineup and Alameda co. District Atty office failed to disclose info on Mar 23, 98 as motion to dismiss hearing was held Mar 3, 98 and the Dep. D.A William Baldwin failed and or refused to turn over the undocumented photo lineup displays in and for the hearing saying evidence didn't exist causing motion to be denied further illegally incarcerating petitioner as can be verified by public defender Michael McCormick see Exhibit F Mar 23, 98 letter + the undocumented photo displays have been assembled and bought by my petition, claims see Exhibit G the 3 undocumented photographic lineup displays 1 picture of physical lineup as evidence, info, claims requires him to be released from state custody.

4.

17.)  PETITIONER STATES HIS PETITION MUST BE HEARD AND HE RELEASED UNDER PEOPLE v. THOMAS LEE GOLDSTEIN 9TH CIR. SEE EXHIBIT H WRONGFUL CONVICTION CASE.

18.)  "WHEN A DEFENDANT ALLEGATIONS ARE BASED ON FACTS AN EVIDENTIARY HEARING IS REQUIRED DOGANIERE vs. UNITED STATES vs. ESPINOZA 866 F.2d 1067, 1069 (9TH CIR. 1988) CERT DENIED 499 U.S. 940, 111, S. CT. 1398 113 L. Ed. 2d 454 (1991)

RESPECTFULLY SUBMITTED,

            I DECLARE UNDER
            PENALTY OF PERJURY
            ALL TRUE.

DATED: 7-18-07

                                Antonio Williams

**5.**

"Exh" Copy
A

IN THE FIRST DISTRICT COURT OF APPEAL:

ANTONIO L. WILLIAMS

V

W. J. SULLIVAN "warden"

CASE No. A113319

AFFADAVIT OF TIMELINESS OF PETITION, INFO OF FACTS OF LOWER COURT DECISION OF GROUNDS TO AMEND TO PETITION AS IS A PRIMA FACIE CASE:

PETITIONER COME BEFORE THE COURT WITH AFFADAVIT OF TIMELINESS OF PETITION, INFO OF FACTS OF LOWER COURT DECISION OF GROUNDS TO AMEND TO PETITION, FOR CORRECT ORDER OF RELIEF. PLEASE SEE PAGES 2, 3, 4 OF THIS AFFADAVIT AND SUPPORTING EVIDENCE ENCLOSED ATTACHE HERETO EXHIBITS 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18

**RECEIVED**

APR - 6 2006

COURT OF APPEAL
FIRST APPELLATE DISTRICT

Petitioner submit These Claims, grounds (1) Prosecutorial-Misconduct by withheld Evidence, (2) Prosecutorial Misconduct by THE Trial Judge Abused Discretion not using Jurors Instructions, (3) Prosecutorial Misconduct by THE Prosecutors known Perjured use, Testimony in This Petition To First District court For Relief And or Reversible of criminal conviction on said grounds supported by material, Documents, Transcripts. "Said Petition, grounds were submitted on Feb 15, 06 Along with Motions 1 For Evidentiary Hearing, 2. Appointment of counsel, 3. To Disqual-ify And or recuse Superior court Judge Larry Goodman From Hearing Petition, 4. Request-ing order To be Issued Timely An Direct D.A office To reply To Petition, etc To ALA-Meda Co. Superior court, A copy submitted served on Alameda co. District Atty Thomas Orloff, on Feb 23, 06 Alameda Co. Superior court Judge Larry Goodman Abused Dis-cretion Denied THE Petition, Ignored Mot-ing on said 4 Motions And only returned Filed coversheet For A Motion To Appoint counsel And A Proof service verifying I sent These Motions see Exhibit 1 of Denial of Petition of writ of Habeas Corpus, Exhibit 2 Proof service, And

EXHIBIT 3 OF THE MOTION TO APPOINT COUNSEL A ONLY FILED COVER SHEET WAS RETURNED, AN EXHIBIT 4 OF MOTION FOR EVIDENTIARY HEARING, EXHIBIT 5 OF MOTION REQUESTING ORDER TO BE ISSUED TIMELY AN DIRECT D.A OFFICE TO REPLY TO PETITION, ETC AND EXHIBIT 6 OF MOTION TO DISQUALIFY AND OR RECUSE ALL OF WHICH ALAMEDA CO. SUPERIOR COURT JUDGE LARRY GOODMAN ABANDON AN DIDN'T RULE ON BY CONFLICT OF INTEREST AN BY SO ABUSED DISCRETION THE MOTION TO DISQUALIFY AND OR TO RECUSE WAS AGAINST JUDGE LARRY GOODMAN FROM PRESIDING TO HEAR PETITION, ETC DUE TO HE WAS A PRE- TRIAL JUDGE IN THIS MATTER IN ALAMEDA CO. SUPERIOR COURT DENIED 2 MOTIONS TO DIS MISS IN SEPT, DEC 97 A SERIES OF MARSDEN MOTIONS IT WAS A MOTION TO DISQUALIFY JUDGE LARRY GOODMAN DEC 12, 97 HEARD SEE EXHIBITS 7, 8, 9, 10, 11 "PETITIONER NOW ADDRESSES THE TIMELINESS OF HIS PETITION THERE NO SPECIFIC TIME LIMITS FOR FILING A STATE HABEAS PETITIONS AN PETITIONERS GROUNDS ARE NEW AND NEWLY DISCOVERED EVIDENCE AND HIS APPOINTED APPELLATE ATTORNEY

3.

JAMES F. JOHNSON REFUSED TO USE ANY OF THESE GROUNDS SEE HIS LETTER EXHIBIT

13    PETITIONER EVEN FILED COMPLAINTS WITH STATE BAR AGAINST SAID ATTORNEY BECAUSE HE WOULDN'T AN PETITION THIS COURT WITH MARSDEN MOTION AT THE TIME TO REMOVE SAID COURT REFUSED SEE EXHIBITS 14, 15, 16 THE APPELLATE ATTY JAMES F. JOHNSON FILED A EXTENSION AND LIED TO THIS COURT THAT IT WAS TO INCLUDE JUROR INSTRUCTIONS AS A ISSUE AN DIDN'T AS IT WAS BOUGHT WITH THIS PETITION SEE EXHIBIT 17    WHEN AT TIME PETITIONERS DIRECT APPEAL WAS PENDING AS HE'S NOT ATTORNEY AND DIDN'T KNOW STEPS OR HAVE INFO TO DO SO AN REQUEST FOR ATTY WAS DENIED. PETITIONER IS ILLEGALLY INCAPACATED AN GROUNDS OF HIS PETITION EXONERATE HIM AN HE USING HIS PETITION UNDER PEOPLE VS GOLDSTEIN TO DO SO SEE EXHIBIT

18

RESPECTFULLY SUBMITTED,


I DECLARE UNDER
PENALTY OF PERJURY
ALL TRUE

DATED:


Antonio Williams

4.



COPY

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## IN AND FOR THE
## FIRST APPELLATE DISTRICT
## DIVISION FIVE

In re ANTONIO LUIS WILLIAMS on Habeas Corpus.

**FILED**

MAY 0 5 2006

Court of Appeal No. A113319
Alameda Co. Super. Ct. No. 130594

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____

BY THE COURT:*

The petition for writ of habeas corpus is denied. (*In re Dixon* (1953) 41 Cal.2d 756, 759.)

Date  **MAY 05 2006**                              **SIMONS, J.**   Acting P.J.

* Before Simons, Acting P.J., Gemello, J. and Reardon, J. (Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

In re ANTONIO LUIS WILLIAMS,
on Habeas Corpus.

No. A113319

FILED
Court of Appeal First Appellate District

APR 2 1 2006

Diana Herbert, Clerk
By_____Deputy Clerk

Alameda County Superior Court
No. 130594

**BY THE COURT:**

The above-entitled case is transferred from Division Two to Division Five of the First District Court of Appeal. This order is made pursuant to California Rules of Court, rule 47.1(b)(1)(B). This petition was assigned to Division Two because a prior appeal (A087060, People v. Williams) was decided by Division Two. Justice James Richman, who was the trial court judge in Alameda County on the underlying case, is now a member of the panel in Division Two. The panel in Division Two has recused themselves and the case is being transferred to the next available division for assignment.

Dated: APR 2 1 2006

McGUINESS, A. _____A.P.J.



MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO
———

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES



☐   SAN FRANCISCO 94102
EARL WARREN BUILDING
350 McALLISTER STREET
(415) 865-7000
———

☐   LOS ANGELES 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
(213) 830-7570
———

## Supreme Court of California

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT
May 26, 2006

Antonio Luis Williams #J-05660
California Correctional Institution
P.O. Box 1906
Tehachapi, CA 93581

Re:    **A113319 – Antonio Luis Williams on Habeas Corpus Petition for Review**

Dear Mr. Williams:

We hereby return unfiled your petition for review received May 26, 2006. The record disclosed that the Court of Appeal filed an order denying the petition for writ of Habeas Corpus on May 5, 2006. Under the court rules, the last day a timely petition for review could have been filed was May 15, 2006.

If you wish to file a petition for writ of Habeas Corpus, we require that you complete the enclosed form as fully as possible. Please sign the completed form at the bottom of page six. We must have an original signature. You may attach documents to this form.

We require an original and ten copies of the enclosed form are required from you. Your institution has facilities for making the required number of copies. If the institution refuses to make copies, we will accept the original alone.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By: Robert R. Toy

Enclosure



MARY JAMESON
AUTOMATIC APPEALS SUPERVISOR

JORGE NAVARRETE
SUPERVISING DEPUTY CLERK

SAN FRANCISCO

—

NATALIE ROBINSON
SUPERVISING DEPUTY CLERK

LOS ANGELES

☒ SAN FRANCISCO, CA 94102
EARL WARREN BUILDING
350 McALLISTER STREET
415-865-7000

☐ LOS ANGELES, CA 90013
RONALD REAGAN BUILDING
300 SOUTH SPRING STREET
213-830-7570

**Supreme Court of California**

FREDERICK K. OHLRICH
COURT ADMINISTRATOR AND
CLERK OF THE SUPREME COURT

June 12, 2006

Mr. Antonio Williams J-05660
California Correctional Institute
P.O. Box 1906
Tehachapi, CA 93561

Re:     **Court Appeal Case No:  A113319 – Petition for Review**

Dear Mr. Williams:

We hereby return unfiled your documents, which we received June 9, 2006. A check of the Court of Appeal docket shows that the petition for a writ of review was denied May 5, 2006. This court lost jurisdiction to act on any petition for review June 5, 2006. (See Cal. Rules of Court, rule 28(e).)  Without this jurisdiction, this court is unable to consider your request for legal relief.

If you wish to file a petition for writ of habeas corpus, we require that you complete the enclosed form as fully as possible.  Please sign the completed form at the bottom of page six.  We must have an original signature.  You may attach documents to the form.

We require an original and ten copies of the petition form from you.  Your institution has facilities for making the required number of copies.  If the institution refuses to make copies, we will accept the original alone.

Very truly yours,

FREDERICK K. OHLRICH
Court Administrator and
Clerk of the Supreme Court

By:  Cindy Agno, Deputy Clerk

Enclosures



Law Offices
Alameda County Public Defender

001157

Main Office
1225 Fallon Street
Oakland, CA 94612-4277
(510) 272-6600

Jay B. Gaskill
Public Defender
Harold G. Friedman
Chief Assistant



March 23, 1998

Antonio Williams
aka James Johnson
PFN: ALQ822
Santa Rita Jail
5325 Broder Boulevard
Dublin, CA 94568

Dear Mr. Williams:

Enclosed is your copy of the Memorandum of Points and Authorities in Support of Motion to Dismiss Information which I filed on your behalf.

As you can see, I am asking the judge to dismiss the case because before the preliminary examination the prosecution failed to disclose to the defense crucial information about the case, including the photographic lineup shown to the witnesses to the robbery. The District Attorney presumably will respond to the motion in writing, and the judge will listen to argument when you come to court for the hearing on the motion on March 31, 1998.

If the judge grants the motion, your case will be dismissed. But under the law the District Attorney can still file another complaint against you and start the whole process over in municipal court. If the judge denies the motion, your case will be scheduled for a "disposition and setting" or a hearing on a motion to suppress evidence. Attorney Karen Nance will be transferred soon to another assignment, so your case will reassigned to another attorney on our felony trial staff.

If you have any questions about the motion, please feel free to call me. My direct telephone number is 272-6643.

Sincerely,

LAW OFFICES
ALAMEDA COUNTY PUBLIC DEFENDER

Michael McCormick
Attorney at Law

enclosure



↑ ANTONIO WILLIAMS

PETITIONER

Bro MARK WILLIAMS

EXHIBIT G

Deceased Bro ANTHONY WILLIAMS

undocumented Apr 8, 97 Photographic Lineup













★ WANTED ★
211 P.C. BANK ROBBERY
Caution: Armed and Dangerous
Susp stated he had a gun
NB 25-27 yrs 506-508 165
Arrest on Probable Cause for 211 P.C. RD#97-27737
Loc: American Savings Bank 3241 Lakeshore
Dec: 25 MAR 97 0903 hrs
OAKLAND POLICE DEPARTMENT
Robbery Section
Contact: Sgt. E. Juarez
Day or Night: 1(510)238-3951
PHOTO ISSUED: 26 MAR 97

★ WANTED ★
211 P.C. BANK ROBBERY
Caution: Armed and Dangerous
Susp stated he had a gun
NB 25-27 yrs 506-508 165
Arrest on Probable Cause for 211 P.C. RD#97-27737
Loc: American Savings Bank 3241 Lakeshore
Dec: 25 MAR 97 0903 hrs
OAKLAND POLICE DEPARTMENT
Robbery Section
Contact: Sgt. E. Juarez
Day or Night: 1(510)238-3951
PHOTO ISSUED: 26 MAR 97



Apr 8 97
Physical Lineup







All Photos of Antonio Williams

# Man accused of 1979 killing set free

H Exh

APR 3, 04

**ASSOCIATED PRESS**

LONG BEACH — A man who spent 24 years in prison after being convicted of murder was released Friday after a judge dismissed the case, citing lack of evidence.

"I'm nervous and anxious and uncertain about the future, but I'm glad to be out," Thomas Lee Goldstein, 55, said after being released from a Long Beach courthouse.

Goldstein was released two months after another judge threw out his murder conviction. He remained behind bars, however, as prosecutors pursued a retrial.

Two federal judges and a federal appeals panel have ruled that Goldstein was wrongly convicted based on the testimony of a jailhouse informant.

Earlier this week, Superior Court Judge James B. Pierce ruled that prosecutors could not reintroduce separate testimony given during the 1979 trial by Loran Campbell, another key witness against Goldstein, who recanted his testimony in 2002 shortly before dying.

Without that testimony, prosecutors said they couldn't retry Goldstein and sought the dismissal.

Goldstein's attorney Charles Lindner said the case "was never there. They could have never reprosecuted."

Goldstein was a college student when John McGinest was killed by shotgun fire on a Long Beach street Nov. 3, 1979. Goldstein, who lived in a rented garage near the murder scene, was arrested two weeks later.

Other testimony during his trial came from informant Edward F. Fink, a heroin user with a lengthy criminal record. He had testified in more than 10 cases that people had confessed his jail cell.

Evidence suggests Fink struck a deal with prosecutors to get a lighter sentence in exchange for his testimony. Prosecutors' failure to tell defense lawyers about the deal during the trial violated Goldstein's constitutional rights, the U.S. 9th Circuit Court of Appeals said. No physical evidence linked Goldstein to the killing, and the murder weapon was never found.

**FORM E**

Proof of Service by Mail

[Case Name and Court Number]    CASE NO. HC101 40A
WILLIAMS VS SULLIVAN

I declare that:

I am a resident of _C. C. I_ in the county of _TEHACHAPI_

California. I am over the age of 18 years. My residence address is: CALIF CORRECTIONAL

INST. P. O BOX 1906 I-C-210 TEHACHAPI, CA 93581

On _____ ; I served the attached 2 AFFADAVITS: 1 MOTION TO APPOINT COUNSEL: on the

CLERK, ATTY GEN. in said case by placing a true copy thereof enclosed in a sealed

envelope with postage thereon fully paid, in the United States mail at _C. C. I_

addressed as follows: CLERK KERN CO. SUPERIOR COURT

1415 TRUXTUN AVE RM 212 BAKERSFIELD, CA

93301, Dep. ATTY GEN. CHARLES ANTONEN "ATTY GEN. OFFICE"
P. O BOX 944255, SACTO CALIF 94244

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct, and that this declaration was executed on _____[date],

at _TEHACHAPI_, California.

ANTONIO L. WILLIAMS
[Type or Print Name]


Antonio williams
[Signature]

**FORM E**

Proof of Service by Mail

[Case Name and Court Number]    CASE NO. C07-3376
WILLIAMS VS. SULLIVAN

I declare that:

I am a resident of _C.C.I._ in the county of _TEHACHAPI_,
California. I am over the age of 18 years. My residence address is: _CALIF CORRECTIONAL_
_INST. P.O BOX 1906 TEHACHAPI, CALIF 93581_.
On _7-31-07_, I served the attached _EVID. MOTION_ on the
_CLERK_ in said case by placing a true copy thereof enclosed in a sealed
envelope with postage thereon fully paid, in the United States mail at _C.C.I._
addressed as follows: _U.S.D.C   1301   CLAY  ST. 94621_
_OAK, CALIF 94621_

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct, and that this declaration was executed on _7-31-07_ [date],
at _TEHACHAPI_, California.

ANTONIO WILLIAMS
[Type or Print Name]

Antonio Williams
[Signature]



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA    Dept. No. 9

Date: February 23, 2006        Hon. LARRY J. GOODMAN, Judge        Fil R. Cruz, Deputy Clerk.
Not Reported, Reporter

| THE PEOPLE OF THE STATE OF CALIFORNIA | Counsel appearing for Plaintiff | No Appearance |
|---|---|---|
| Plaintiff | | |
| vs. ANTONIO WILLIAMS Aka: JAMES JOHNSON | Counsel appearing | No Appearance |
| | for Defendant Probation Officer appearing | No. Appearance |
| Defendant | | |

Nature of Proceedings: **ORDER OF THE COURT**
**REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

**Case No. 130594**
**PFN:    ALQ822**
**CEN:   7144079**

Petition for writ of habeas corpus is denied.  The Petition is untimely and petitioner fails to demonstrate good cause for the delay.  Further Petitioner has not explained why the Petition is exempt from the timeliness requirements.  If the Petition is timely or exempt from the timeliness requirements, the Petition fails to state a prima facie case for relief.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served **ORDER OF THE COURT** by placing copies in envelopes addressed as shown below and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Antonio Williams J05660
California Correctional Institute
P O. Box 1906  4D-6C-105
Tehapi, Ca 93557

Dated.  February 28, 2006

By: _____
Fil R. Cruz, Deputy Clerk

Writ - Williams, Antonio

"Exh 2"

FILED
ALAMEDA COUNTY

FEB 2 2 2006

CLERK OF THE SUPERIOR COURT
By _Cynthia Brown - Jarmond_
DEPUTY

FORM E

Proof of Service by Mail

[Case Name and Court Number]  ANTONIO WILLIAMS V. W.J. SULLIVAN

I declare that:

I am a resident of   C.C.I   in the county of  TEHACHAPI,

California.  I am over the age of 18 years.  My residence address is: CALIF CONNECTIONAL

INSTITUTION P.O BOX 1906 TEHACHAPI, CA 93581.

On JAN 22 06, I served the attached PETITION CORPUS STATE
MOTION TO APPOINT COUNNEL, EVID HEARING,
DISQUALIFY, MOTION REQUESTING ORDER   on the

OAKLAND SUPERIOR COURT in said case by placing a true copy thereof enclosed in a sealed

envelope with postage thereon fully paid, in the United States mail at  C.C.I PRISON

addressed as follows:   CLERK OF

ALAMEDA COUNTY SUPERIOR COURT

1225 FALLON ST. OAKLAND CALIF 94612, DISTRICT ATTY
TAKE OFF LAY OFF COUNTY ATT ALAMEDA CO, OAKLAND CALIF 1225 FALLON ST
OAKLAND CALIF 94612 SERVED

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct, and that this declaration was executed on   Feb 15 ~~Jan 22~~ 06 [date],

at  TEHACHAPI , California.

ANTONIO WILLIAMS
[Type or Print Name]

Antonio Williams
[Signature]

"ENCLOSED"
1. PETITION OF HABEAS CORPUS
4 MOTIONS

"Exh 3"

IN THE OAKLAND SUPERIOR COURT FOR
COUNTY OF ALAMEDA

ORIGINAL

FILED
ALAMEDA COUNTY

FEB 2 2 2006

CLERK OF THE SUPERIOR COURT
By Cynthia Brown - formanied
DEPUTY

ANTONIO L. WILLIAMS

V

W.J. SULLIVAN

CASE NO: 130594

MOTION TO APPOINT
COUNSEL, NEW INFO,
EVIDENCE, PRIMA,
FACIE SHOWING:

PETITIONER COME BEFORE THE COURT WITH
SAID MOTION TO APPOINT COUNSEL TO ASSIST
REPRESENT ME IN HIS MATTER OF PETITION
OF HABEAS CORPUS, EVIDENTIARY MATTERS AS
NEW EVIDENCE, WITHHELD EVIDENCE OF A
PHOTOGRAPHIC LINEUP DISPLAY INTENTIONAL
SUPPRESSION THERE OF AS BEEN SUBMITTED
AS BY PERJURED TESTIMONY BY OFFICERS
3" AND TRIAL PROSECUTOR REGARDING IT'S EXISTENCE
AND BY SO EXONERATES PETITIONER AND BY
SO COUNSEL SHOULD BE APPOINTED

RESPECTFULLY SUBMITTED,

DATED: Feb 15

I DECLARE UNDER
PENALTY OF

"Exh 4"

IN OAKLAND SUPERIOR COURT FOR COUNTY OF ALAMEDA

ANTONIO L. WILLIAMS

V.

W. J. SULLIVAN

CASE NO. _____

MOTION FOR EVIDENTIARY HEARING; FOR INTRODUCTION OF NEW INFO, EVIDENCE, PERJURED TESTIMONY:

PETITIONER COME BEFORE THE COURT WITH SAID MOTION REQUESTING THIS COURT GRANT AND EVIDENTIARY HEARING FOR THE FOLLOWING REASONS:

1. PETITIONER IS INCARCERATED, IN CUSTODY IN VIOLATION OF THE CONSTITUTION AND OR LAWS TREATIES OF THE UNITED STATES Rose v. Hodges 423 U.S 19, 21, (1975)

2. PETITIONER ATTENDED A PHYSICAL LINEUP APR 8, 97 HELD AT OAKLAND POLICE DEPT. IN WHICH HE WAS DENIED THE RIGHT TO HAVE A ATTORNEY WITNESSED PHYSICAL LINEUP AND LEAD INVESTIGATOR SGT. E. JUAREZ BADGE NO. 7580C AND OR ANOTHER OFFICER, EMPLOYEE PRESENTED TO WITNESSES BEFORE PHYSICAL LINEUP A UNDOCUMENTED PHOTO LINE UP DISPLAY SETTING PETITIONER UP TO BE THE ASSAILANT, ILLEGALLY INCARCERATING PETITIONER.

3. ALAMEDA COUNTY DISTRICT ATTORNEY OFFICE, Dep D.A. Daniel Burke STATE BAR No. 169598 withheld THE UNDOCUMENTED PHOTOGRAPHIC LINEUP DISPLAYS FROM A MAR 31, 98 MOTION. TO DISMISS HEARING HELD FOR THE UNDOCUMENTED PHOTO LINEUP DISPLAYS AND TRIAL VIOLATING DISCOVERY REQUEST FOR UNDOCUMENTED PHOTO LINEUP DISPLAYS AND USED AND CAUSE KNOWN PERJURED TESTIMONY TO BE UNTRUE IN TRIAL BY O.P.D SERGEANTS E. JUAREZ,   B. THURMAN, M. YOLL THAT NO PHOTO-LINEUP EXISTED or was SHOWN TO WITNESSES CAUSING INTENTIONAL SUPPRESSION OF MATERIAL EVIDENCE IN SUPPORT OF FACTS SEE EXHIBITS 1, 2, 3, 4, 5, 6, 7, 8, 9 "MATERIAL EVIDENCE"; TRANSCRIPT TESTIMONY.

"WHEN A DEFENDANT ALLEGATIONS ARE BASED ON FACTS   AN EVIDENTIARY HEARING IS REQUIRED Doganiere v UNITED STATES v ESPINOZA 866 F.2d 1067, 1069 / 9TH CIR 1989) CERT DENIED 499 U.S. 940, III, S. CT. 1398 .113 L. E.d 2d 454 / 1991) PRIMA FACIE SHOWING.

RESPECTFULLY SUBMITTED,

I DECLARE UNDER PENALTY
OF PERJURY ALL TRUE

DATED: Feb 15, 06

Antonio williams

*Exhibit 1*

# REPORT OF INTERVIEW

## I. DATE: 3/4/98

001344

CLIENT:
ATTY:        ANTONIO WILLIAMS
INV. #:      MCCORMICK
DOCKET:      I-98-026
             130594
Dictation Date: 3/4/98

Date Typed: March 9, 1998

FILE

SUBJECT:        ANTONIO RICHARDSON  AQS 167

INVESTIGATOR:   LABEAUX

Richardson states that he participated in a physical lineup on April 8, 1997. Richardson states that a Black Male Jailor and two Plainclothes White Officers entered the Pod. Richardson states that Client was with the three Officers.

Richardson states that one of the Plainclothes Officers stated to Client "Pick somebody out for a lineup".

Client then said "I don't want to pick anybody, you all trying to set me up."

The same officer then responded, well go on and pick somebody out and stop playing with us."

Richardson states that the cop and Client began arguing back and forth about how Client was saying that he was being framed by these guys.

The same officer then pointed to Richardson and said, "How about him, he looks similar to you"

Client then said, directing his comment to Richardson, "no, Tone, don't get involved, they're trying to set me up."

Richardson states that the four, the jailor, the two Plainclothes Officers and client then left the Pod.

Richardson states that he cannot explain why they left and that it did not seem like the Client was not trying to cooperate with them, he just did not want to be involved with picking out fillers for his lineup.

Richardson states about five or ten minutes later the Black Male Jailor and two Plainclothes Officers returned with Client, however one of the Plainclothes Officers was not the same one, he was replaced with a Black Male Plainclothes Officer. Richardson recalls that Client then said, when they entered the Pod,

continued.......



REPORT OF INTERVIEW

CLIENT: ANTONIO WILLIAMS
SUB: ANTONIO RICHARDSON                    P. 2                    INV. #: I98-026

"Come on blood", referring to Richardson, "come on man".

They then walked out of the Pod to the hallway area.  Throughout their walk, Client kept saying,

"I want an attorney here.  They're trying to set me up and I don't want to be involved."

Richardson states that they were in the hallway of City Jail and the officers were having each of the fillers say something however Richardson cannot recall what he was told to recite but that Client kept saying,

"Man they trippin', I ain't did nothin' like this.

Richardson states that the Client and the White Male Officer were getting into it again.  The Client and White Officer were down the hallway near the bars while Richardson and the other fillers waited further into the hallway.  Richardson states that they were eventually told to enter the room and stand in front of some numbers and each person was asked to approach the mike, turn this way and turn that way.

Richardson recalls that everyone complied with what was asked of them including the Client. Richardson recalls that Client was calm and complete and did not cause a problem.

Previous to entering into the physical lineup room, Client did seem a little emotional in that he had been arguing back and forth with the two Plainclothes Officers.  The White Plainclothes Officer was saying all kinds of stuff to the Client and Client was trying to get back into it with the White Male Plainclothes Officer.  Richardson recalls trying to get Client's attention to tell him to just calm down and be cool.

Richardson states that he has been incarcerated currently from Feb. 13, 1998 to 3/14/98 for a petty theft and traffic tickets.

Richardson states that he also is appearing later this month on a 2/98 incident where he was cited on West St. in Oakland for knocking on a building or establishment where narcotics were being sold.

Richardson states that he is on 3-year unsupervised probation for 11350 charge in Alameda County.  Richardson states he has 40 days to go on the probation for that particular charge.

TLB:or

REPORT OF INTERVIEW

Exhibit 2                    000174

**O P D**
ADDITIONAL INFORMATION REPORT

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

RD # 97-27737

| CRIME Robbery | [ ] SUPPLEMENTAL 211 P.C | INCIDENT # | V1 | VICTIM LAST, First, Mid. |

SUSPECT LAST, First, Mid.

INCIDENT LOCATION 3241 Lakeshore

DATE OF THIS REPORT 9APR97    ORIGINAL DATE REPORTED

| ITEM # | QNTY. | PROPERTY (and/or NARRATIVE) ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC | SERIAL # | VALUE |

On 8Apr97, 1830 Hrs. I went to the jail to put together a physical line-up, which would include Antonio Williams AKA. James Johnson. I had been advised earlier by the jail supervisor, Sgt. R. Stewart, that Williams had stated he was not going to willingly attend the line-up. Sgt. Stewart explained to Williams that he would draw attention to himself if he had to be physically forced to attend the line-up. Sgt. Thurman had also been to the jail and advised Williams that it would be best if he attended the physical line-up without having to be forced. Sgt. Hollomon also did the same. Williams even stated we would have to fight him to get him to attend and he would do whatever he had to do if anyone tried to force him to do anything. Sgt. Brock and I went to the jail and also tried to convince Williams to willingly comply, but he still refused. I handcuffed Williams and tried to walk him throughout the jail to pick his fillers. He refused to pick any fillers. He was brought back to the area near his cell, and we attempted to pick his fillers. Williams was insisting we were setting him up and he wanted a lawyer to witness the line-up. We explained to him he did not have the right to have a lawyer as present as he was not charged with the crime he was being lined up for. He was so insistent, an attempt was made to contact the public defenders office, but there was no one present. He stated he wanted to see the law in "black and white." I showed him the Point of View issued by the Alameda County District Attorney's Office, which cited the case law. Williams was not satisfied and was still screaming at the other people who agreed to attend and intimidating them to refuse. We were unable to get any other prisoners to attend. We began to arrange for police officers in civilian clothing to stand in the line-up, when Williams told me he would comply but he wanted to pick his own fillers. Up to this point he was very hostile, yelling and threatening to resist with force from standing in the line-up. Williams picked his fillers.

The physical lineup was held at the Oakland Police Department Lineup Room. The line was comprised of the following people selected from the general population of the Oakland City jail.

Lineup:

| | | | |
|---|---|---|---|
| 1- | Scott, Markell | MB | |
| 2- | Everett, Milton | MB | |
| 3- | Johnson, James | MB | AMW667 |
| 4- | McGowan, Andrew | MB | ALQ822 |
| 5- | Copes, Eugene | MB | UIB399 |
| 6- | Richardson, Antonio | MB | UHY450 |
| | | MB | AQS167 |

*E x h  3*

Law Offices

## Alameda County Public Defender

001157

Main Office
1225 Fallon Street
Oakland, CA 94612-4277
(510) 272-6600



Jay B. Gaskill
Public Defender
Harold G. Friedman
Chief Assistant

March 23, 1998

Antonio Williams
   aka James Johnson
PFN: ALQ822
Santa Rita Jail
5325 Broder Boulevard
Dublin, CA 94568

Dear Mr. Williams:

Enclosed is your copy of the Memorandum of Points and Authorities in Support of Motion to Dismiss Information which I filed on your behalf.

As you can see, I am asking the judge to dismiss the case because before the preliminary examination the prosecution failed to disclose to the defense crucial information about the case, including the photographic lineup shown to the witnesses to the robbery. The District Attorney presumably will respond to the motion in writing, and the judge will listen to argument when you come to court for the hearing on the motion on March 31, 1998.

If the judge grants the motion, your case will be dismissed. But under the law the District Attorney can still file another complaint against you and start the whole process over in municipal court. If the judge denies the motion, your case will be scheduled for a "disposition and setting" or a hearing on a motion to suppress evidence. Attorney Karen Nance will be transferred soon to another assignment, so your case will reassigned to another attorney on our felony trial staff.

If you have any questions about the motion, please feel free to call me. My direct telephone number is 272-6643.

Sincerely,

LAW OFFICES
ALAMEDA COUNTY PUBLIC DEFENDER

Michael McCormick
Attorney at Law

enclosure



Deceased Bro
Anthony
Williams

Bro Mark Williams

Exhibit 4

Petitioner Antonio Williams

Undocumented
Apr 8, 97 Photographic Lineup Displays







All Photos Of
Antonio Williams

CONSOLIDATED ARREST REPORT

Apr 8 97
Physical Lineup

"SGT. JUAREZ TESTIMONY" Exhibit 5                    196

1    PATAJO.

2    Q.    ALL THREE OF THOSE WERE MEN?

3    A.    YES.

4    Q.    YOU HAD ALL THREE OF THOSE MEN COME TO THE PHYSICAL

5    LINEUP AND PARTICIPATE IN THE PHYSICAL LINEUP?

6    A.    YES.

7    Q.    THAT HAPPENED IN THE EVENING TIME OF APRIL 8TH,

8    1997, IS THAT RIGHT?

9    A.    YES, IT DID.

10   Q.    NOW, BEFORE APRIL 8TH, 1997, DID YOU HAVE OCCASION

11   TO INTERVIEW THOSE THREE MEN, EITHER AKIRA MENDOZA,

12   RIZALINO PATAJO, OR GUSTAVO CONTRERAS?

13   A.    I TALKED TO THE BANK MANAGER AT THE TIME OF THE

14   ROBBERY AT MISSION NATIONAL BANK.

15   Q.    AT ANY TIME, DID YOU SHOW EITHER OF THOSE THREE

16   MEN -- BEFORE THE PHYSICAL LINEUP, AT ANY TIME DID YOU

17   EVER PERSONALLY EVER SHOW ANY PHOTOS AT ALL?

18   A.    NO.

19   Q.    ANY PHOTOS OF THE DEFENDANT?

20   A.    NO.

21   Q.    ANY PHOTOS OF OTHER SUSPECTS?

22   A.    NO.

23   Q.    ANY PHOTOGRAPHIC LINEUP AT ALL?

24   A.    NO, I DID NOT.

25   Q.    TO YOUR KNOWLEDGE AT ALL, AT ANY TIME BEFORE THEY

26   PARTICIPATED IN THAT PHYSICAL LINEUP, APRIL 8TH, 1997,

27   WERE ANY OF THOSE THREE MEN SHOWN A PHOTOGRAPHIC LINEUP?

28   A.    NO, NOT TO MY KNOWLEDGE.

197

1   Q.    AND BY "PHOTOGRAPHIC" LINEUP, I MEAN SIX PHOTOS IN A
2   LINE TOGETHER, PEOPLE WITH SIMILAR DEMOGRAPHICS, AND
3   HAVING THE WITNESS CHOOSE THE PERSON WHO ROBBED THEM OUT
4   OF THAT PHOTO LINEUP?
5   A.    YES.
6   Q.    AT NO TIME, TO YOUR KNOWLEDGE, WAS ANY PHOTOGRAPHIC
7   LINEUP DONE BEFORE APRIL 8TH, 1997?
8   A.    NO.
9   Q.    DID YOU, YOURSELF, AFTER APRIL 8TH, 1997, EVER
10  CONDUCT A PHOTOGRAPHIC LINEUP?
11  A.    NO.
12  Q.    SO, BASICALLY, FOR THIS MISSION NATIONAL BANK
13  INCIDENT, TO YOUR KNOWLEDGE NO PHOTOGRAPHIC LINEUP HAS
14  EVER BEEN CONDUCTED?
15  A.    NO.
16  Q.    NOW, OTHER THAN THAT PHYSICAL LINEUP OF APRIL 8TH,
17  1997, TO YOUR KNOWLEDGE WAS THERE ANY OTHER PHYSICAL
18  LINEUP THAT TOOK PLACE?
19  A.    NO.
20  Q.    NOW, AT THAT PHYSICAL LINEUP, ALL THREE OF THOSE
21  WITNESSES AND VICTIMS IDENTIFIED THE DEFENDANT, IS THAT
22  RIGHT?
23  A.    THAT IS CORRECT.
24  Q.    TO YOUR KNOWLEDGE, DID ANY -- LET ME WITHDRAW THAT.
25        DO YOU KNOW WHAT A "SHOWUP" IS?
26  A.    YES.
27  Q.    TELL THE COURT WHAT A SHOWUP IS.
28  A.    WELL, MY DEFINITION OF FIELD SHOWUP WOULD BE SHORTLY

1    AFTER A CRIME OCCURS, SOMEONE IS STOPPED ON THE STREET OR

2    SOMEONE IS DETAINED, AND THE WITNESSES OR THE VICTIM WILL

3    BE BROUGHT OUT TO THE LOCATION OF WHERE THE SUSPECT IS

4    DETAINED TO LOOK AT THE SUSPECT AND SEE IF THAT'S THE ONE

5    WHO COMMITTED THE CRIME.

6    Q.    TO YOUR KNOWLEDGE, IN THIS CASE, AT ANY TIME, WAS

7    THERE A SHOWUP, EITHER BEFORE OR AFTER THAT PHYSICAL

8    LINEUP OF APRIL 8TH, 1997?

9    A.    NO.

10    Q.    SO, TO YOUR KNOWLEDGE, THE SOLE MEANS OF

11    IDENTIFICATION IN THIS PARTICULAR CASE BY EITHER GUSTAVO

12    CONTRERAS, RIZALINO PATAJO, AND AKIRA MENDOZA WAS WHEN

13    THEY IDENTIFIED THE DEFENDANT IN THE PHYSICAL LINEUP ON

14    THE NIGHT OF APRIL 8TH, 1997?

15    A.    YES.

16    Q.    NOW, YOU WENT AND TESTIFIED AT A PAROLE HEARING

17    SOMETIME AFTER APRIL 8TH, 1997, IS THAT RIGHT?

18    A.    YES, THAT'S CORRECT.

19    Q.    AND THAT PAROLE HEARING WAS TAPED, IS THAT RIGHT?

20    A.    THAT'S CORRECT.

21    Q.    YOU LISTENED TO THAT TAPE UPSTAIRS, I PLAYED IT FOR

22    YOU EARLIER THIS MORNING?

23    A.    YES, I DID.

24    Q.    SOMETIME IN THAT PAROLE HEARING ON THAT TAPE, YOU

25    ONCE REFERRED TO A "PHOTO" LINEUP?

26    A.    THAT'S CORRECT.

27    Q.    WHAT DID YOU MEAN WHEN YOU REFERRED TO THAT "PHOTO"

28    LINEUP?

1         THE DEFENDANT:  EXCUSE ME, YOUR HONOR.  I'D LIKE

2  TO EXCUSE MYSELF TO ANYTHING FURTHER.

3         THE COURT:  I SUGGEST YOU STAY HERE.  IF YOU

4  WANT TO EXCUSE YOURSELF, YOU HAVE TO MAKE AN APPROPRIATE

5  MOTION AND WHATEVER IS INVOLVED.

6         THE DEFENDANT:  THIS IS A DISCRIMINATORY

7  PROCESS, THE OAKLAND POLICE FRAMING.  HE HAS WITNESSES.

8  AS I SAID, I AM NOT GETTING JUSTICE IN ALAMEDA COUNTY.

9  I'D PREFER TO FILE MY MOTIONS IN FEDERAL COURT FOR

10  VIOLATIONS IN ALAMEDA COUNTY.

11         THE COURT:  WHATEVER MOTIONS YOU HAVE TO MAKE,

12  YOU HAVE TO MAKE IT.

13         THE DEFENDANT:  AGAIN, YOUR HONOR, I'M NOT

14  PARTICIPATING.  I'D LIKE TO EXCUSE MYSELF UNTIL AFTER YOU

15  AND THE REST OF YOU PEOPLE'S HEARING.

16         THIS IS YOUR COURT.  THIS IS YOUR HEARING.  I

17  HAVE NO RIGHTS HERE.  I OBJECT.  THIS IS A BIASED

18  SITUATION.  I'D LIKE TO EXCUSE MYSELF.

19         THE COURT:  SO YOU'RE REFUSING TO STAY IN THE

20  COURTROOM AND REPRESENT YOURSELF?

21         THE DEFENDANT:  I'M REFUSING TO PARTICIPATE IN

22  YOUR AND THE PROSECUTION 1538.5.  YOU'VE BROKEN THE LAW,

23  VIOLATED MY RIGHTS.  I'LL OBJECT.  AND I'M EXCUSING

24  MYSELF.

25         THE COURT:  I THINK WHAT I'LL DO IS TAKE A

26  RECESS WHILE HE IS EXCUSING HIMSELF, AND DO WHAT I CAN TO

27  REVIEW THE SITUATION AND SEE WHERE WE GO FROM THERE.

28         MR. BURKE:  YOUR HONOR, CAN THIS WITNESS BE

200

1    EXCUSED AT THIS TIME, SINCE WE'RE SO CLOSE TO NOON, AND

2    HAVE HIM EXCUSED AT LEAST UNTIL MONDAY?

3            THE COURT:  OH, SURE.

4            MR. BURKE:  THANK YOU.

5                    (NOON RECESS)

6                    ---000---

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 1  as to what would be read.

 2       MR. WILLIAMS:  I don't care about the agreement.  I'm

 3  talking about law.  The jury is not going to be misled, is

 4  what I'm saying.  I'll tell them myself.

 5

 6            (The Jurors enter the courtroom.)

 7

 8       THE COURT:  Are we prepared -- the record will show

 9  the jurors have returned.

10       Are we prepared to deal with the statement now,

11  Mr. Burke?

12       MR. BURKE:  Yes, Your Honor.

13       THE COURT:  Ladies and gentlemen, you have been

14  provided a transcript.  It is actually a partial transcript

15  of the testimony that was given by Officer Juarez at a parole

16  hearing in June of 1997.  The transcript is being provided to

17  you just for your guidance in listening to the portion of the

18  tape that's going to be played.

19       I will state for the record that Mr. Burke and

20  Mr. Williams have stipulated that the testimony of Officer

21  Juarez was given under oath at this parole hearing, so you

22  won't hear him being sworn or anything like that, but that's

23  a stipulation.

24       Correct, Mr. Burke?

25       MR. BURKE:  That's correct, Your Honor.

26       THE COURT:  Mr. Williams, that's a stipulated fact,

27  that Officer Juarez --

28       MR. WILLIAMS:  Yes, Mr. Juarez was under oath.

973

1          THE COURT:  With that, you can proceed.

2          MR. BURKE:  For the record, Your Honor, I have taken

3   Court's Exhibit 5 for identification, which is a tape

4   cassette player.  I have dubbed it to the appropriate

5   location.  I'm going to turn on that tape now.  I have given

6   each of the jurors a copy of the transcript.

7          I have had Madam Court Reporter -- Madam Clerk mark

8   for identification a copy of that transcript, which is

9   People's 13 for identification.  I hand that to the officer

10  now.  Defense counsel has been given a copy of this

11  transcript as well.

12         Hopefully, this will work.  I'm pressing play on the

13  recorder now.

14         (Cassette Tape, Exhibit No. 13, is played.)

15         MR. BURKE:  For the record, I have now turned off the

16  tape.

17  Q.     Sergeant Juarez, you just listened to that tape of

18  that parole hearing?

19  A.     Yes.

20  Q.     And that's you testifying at that parole hearing?

21  A.     Yes, it is.

22  Q.     The defendant was present?

23  A.     Yes.

24  Q.     And then there was a parole board officer asking you

25  these questions and you answering them?

26  A.     Yes, that's correct.

27  Q.     Now, you followed along with the transcript that I

28  have had marked as People's 13 for identification?

1  A.      Yes, I did.

2  Q.      And that transcript is a generally accurate depiction

3  of the taped parole interview by the parole board?

4  A.      Yes.

5  Q.      Now, at the beginning of that tape, you referred to a

6  photo lineup, is that right?

7  A.      That's correct.

8  Q.      And as you have testified before, there was never any

9  photo lineup?

10  A.      That's correct.

11  Q.      You were -- you meant to say physical lineup when you

12  said photo lineup?

13  A.      Yes.

14  Q.      Now, if you keep reading the entire transcript that

15  we have just -- of the portion of the tape that we just

16  played, you are talking about that physical lineup, is that

17  right?

18  A.      Yes, that's correct.

19  Q.      Three witnesses that you are referring to who

20  identified the defendant, you were referring to Gustavo

21  Contreras, Akira Mendoza and Rizalino Patajo?

22  A.      Yes, I am.

23  Q.      And all of that conversation that you have with the

24  parole board people, are you constantly over and over again

25  talking about the physical lineup?

26  A.      Yes, that's correct.

27  Q.      And even several times in this, you refer to it as

28  the physical lineup?

```
 1   A.      Yes.

 2   Q.      It was just at the beginning that you misspoke?

 3   A.      Yes, that's correct.

 4   Q.      Now, you, yourself, were at that physical lineup, is

 5   that right?

 6   A.      Yes, I was.

 7   Q.      And ultimately, the defendant picked all of his

 8   fillers, is that right?

 9   A.      That's correct.

10   Q.      Were they all generally relatively close in age?

11   A.      Yes.

12   Q.      They were all about the same height?

13   A.      Yes.

14   Q.      They were all about the same weight?

15   A.      Yes.

16   Q.      And they were all African American men, is that

17   right?

18   A.      Yes.

19   Q.      Now, further evidence that you were talking about the

20   physical lineup is when you referred to the three statements

21   of the witnesses, is that right?

22   A.      Yes, that's correct.

23           MR. BURKE:  Your Honor, I would like to have these

24   three follow-up statements marked as People's 14, 15 and 16

25   for identification.  Fourteen will be Gustavo Contreras'

26   supplemental statement, 15 will be Rizalino Patajo's, and 16

27   will be Akira Mendoza's statement.

28
```

976

1           (Contreras Statement, Patajo Statement, Mendoza

2           Statement are marked as Plaintiff's Exhibit

3           Nos. 14, 15 & 16, respectively, for

4           identification.)

5   Q.      Now, when you are talking about that physical lineup

6   at the parole board, you refer to their three statements, is

7   that right?

8   A.      Yes.

9   Q.      And you explain why Gustavo Contreras put a question

10  mark on his physical lineup card?

11  A.      Yes.

12  Q.      And that was because he said that now the guy had a

13  little bit more facial hair, is that right?

14  A.      Yes, that's correct.

15  Q.      Other than that, he knew it was the guy?

16  A.      Yes, and he seemed a little taller at the bank.

17  Q.      Showing you People's 10, 11 and 12 for

18  identification, are those the three lineup cards that you

19  were referring to in your statement to the parole board?

20  A.      Yes.

21  Q.      And you, yourself, were -- you were the person that

22  ultimately collected all of those lineup cards and placed

23  them into evidence?

24  A.      Yes.

25          MR. BURKE:  Your Honor, at this time, I would move

26  People's 10, 11 and 12 into evidence.

27          THE COURT:  Mr. Williams?

28          MR. WILLIAMS:  Submitted.

1          THE COURT:  No objection?

2          MR. WILLIAMS:  No objection.

3          THE COURT:  Ten, 11 and 12, the three lineup cards,

4    will be admitted.

5               (Plaintiff's Exhibit Nos. 10, 11, and 12 are

6               received in evidence.)

7          MR. BURKE:  Q.  Showing you People's 14, 15 and 16

8    for identification, those are the three statements that were

9    taken by the three witnesses from the Mission National Bank

10   after they participated in the physical lineup, is that

11   right?

12   A.      Actually, two of them are.

13   Q.      Did I mismark one?

14   A.      One of them is actually from one taken at the scene.

15   Q.      Okay.  I'm sorry.  I'm going to have -- that's

16   People's 15 that you pulled out, is that right?

17   A.      Yes.

18   Q.      They all start to look alike after a while.

19           I'm going to have this remarked as People's 15, and

20   it is dated April 8, 1997.

21           Now, the two statements that you are looking at right

22   now, and I'll give you the third -- thank you -- I'll give

23   you the third, all of those are dated April 8, 1997, is that

24   right?

25   A.      Yes, that's correct.

26   Q.      And all of those were taken after the physical lineup

27   took place, is that right?

28   A.      Yes.

"SGT. JUAREZ TESTIMONY"

978

1   Q.      Now, even though you misspoke that one word in the
2   tape to the parole board, there was never any photographic
3   lineup, is that right?
4   A.      No, there wasn't.
5   Q.      You are absolutely certain of that?
6   A.      Yes.
7   Q.      Not before or after the physical lineup, is that
8   right?
9   A.      That's right.
10  Q.      Other than the surveillance photos, you never showed
11  any photos of the defendant to any witnesses, is that right?
12  A.      That's correct.
13  Q.      Now, after the defendant was developed as a suspect,
14  you came into contact with him, is that right?
15  A.      Yes, that's correct.
16  Q.      You looked at the surveillance photos, is that right?
17  A.      That's correct.
18  Q.      The person depicted in the surveillance photos I'll
19  show you 3 and 4 in evidence, they appear to you to be the
20  defendant?
21  A.      Yes.
22  Q.      You were confident of that after seeing those
23  surveillance photos, is that right?
24  A.      Yes.
25  Q.      You see the surveillance photos all the time in your
26  duties as a robbery investigator at the Oakland Police
27  Department, is that right?
28  A.      Yes.

1          MR. BURKE:  At this time, I don't have any further

2   questions of Sergeant Juarez.

3

4                      CROSS-EXAMINATION

5          MR. WILLIAMS:  Q.  How are you doing, Mr. Juarez?

6   A.     Good.

7   Q.     I would like to --

8          THE COURT:  Maybe it makes the most sense, you want

9   to get started on your cross-examination?

10         MR. WILLIAMS:  I would like to get started, because I

11  want to keep -- I want the jurors to keep an open mind of

12  something before we leave.

13         THE COURT:  I'll go for 10 or 15 minutes.  It is

14  right at noon.  Go ahead.

15         MR. WILLIAMS:  Q.  I want to say a few things and we

16  can break.

17         Mr. Juarez, you spoke about some inconsistent

18  statements made to you with regards to me wearing hats, am I

19  right?

20  A.     That's correct.

21  Q.     I state for the record in front of these people, and

22  I'm going to show that beyond a reasonable doubt that that is

23  correct, I was arrested, to your knowledge and to the

24  records, a few days prior before these charges for possession

25  charges, am I correct?

26  A.     I remember, there was a possession arrest.  I don't

27  remember the exact date before this, yes.

28  Q.     You just in your statement here in the parole board

SGT. THURMAN          EXhibit 6

1024

1  suggest to any of the witnesses who to pick?

2  A.      Absolutely not.

3  Q.      Did you ever coerce them into picking a particular

4  person?

5  A.      No, I simply asked them to mark their cards if they

6  could.

7  Q.      You never threatened any of the witnesses?

8  A.      No.

9  Q.      You never encouraged them in any way to pick a

10  particular person?

11  A.      Or anybody at all, no, sir.

12  Q.      At any time before this physical lineup took place,

13  did you show any photographic lineups to any of these

14  witnesses in conjunction with your investigation in this

15  case?

16  A.      No, sir.

17  Q.      At any time after this physical lineup, did you show

18  any photographic lineups to any witnesses in conjunction with

19  this case?

20  A.      No, sir.

21  Q.      Did you ever see Sergeant Juarez show a lineup to

22  anyone at any time in conjunction with the investigation of

23  this case?

24  A.      I did not.

25  Q.      At any time, did you see any sergeants or any law

26  enforcement agents show any photographic lineups to any

27  witnesses in conjunction with the investigation of this case?

28  A.      No, sir.

SGT. YOEL                    Exhibit 7                    1412

1    Q.    NOW BEFORE YOU INTERVIEWED THE DEFENDANT ON TAPE ON

2    APRIL 7TH, 1997, HAD YOU HAD ANY SORT OF, TO YOUR

3    KNOWLEDGE, HAS ANY SORT OF PHYSICAL LINEUP TAKEN PLACE?

4    A.    NO, SIR.

5    Q.    AND AT ANY TIME THROUGHOUT THIS INVESTIGATION, TO

6    YOUR KNOWLEDGE, HAD ANY PHOTO LINEUP EVER TAKEN PLACE?

7    A.    NO.

8              MR. BURKE:   I'M GOING TO GIVE THIS ANOTHER SHOT.

9              (WHEREUPON THE TAPE WAS PLAYED.)

10             MR. BURKE:   OKAY.   FOR THE RECORD THE TAPE HAS

11   STOPPED AND I'M REMOVING THE TAPE FROM THE CASSETTE PLAYER

12   AND I'M GOING TO GIVE MADAM CLERK A CASSETTE FOLDER AS

13   WELL.

14   Q.    SERGEANT YOELL, YOU JUST LISTENED TO THAT TAPE?

15   A.    YES.

16   Q.    OKAY.   IS THAT AN ACCURATE AUDIO RECORDING OF THE

17   TAPED STATEMENT THAT YOU AND SERGEANT JUAREZ TOOK FROM THE

18   DEFENDANT ON APRIL 7, 1997?

19   A.    YES.

20   Q.    NOW AT THAT POINT NO PHYSICAL LINEUP HAD TAKEN

21   PLACE?

22   A.    THAT'S RIGHT.

23   Q.    AND AT THAT POINT IT LATER CAME TO YOUR ATTENTION --

24   SHOWING YOU PEOPLE'S 8 IN EVIDENCE -- THAT THIS JERSEY WAS

25   RECOVERED FROM THE DEFENDANT'S APARTMENT OR THE

26   DEFENDANT'S GIRLFRIEND'S APARTMENT, IS THAT RIGHT?

27   A.    YES.

28   Q.    OKAY.   AT THE TIME THAT YOU TOOK THE STATEMENT FROM

*E x h 8*

1   TO WITNESSES IN COMPLAINTS TO SEE IF THEY CAN MAKE AN

2   IDENTIFICATION OF A SUSPECT.

3   Q.    BUT YOU DOCUMENT THIS INFORMATION, RIGHT?

4            MR. BURKE:  OBJECTION, RELEVANCE.

5            THE COURT:  SUSTAINED.

6            THE DEFENDANT:  Q.  WHAT HAPPENS IF YOU DON'T

7   DOCUMENT?

8            MR. BURKE:  OBJECTION, RELEVANCE.

9            THE COURT:  SUSTAINED.

10           THE DEFENDANT:  Q.  WOULD A PHOTO LINEUP BE IN

11  CONJUNCTION OF A PHYSICAL LINEUP, OTHER THAN THE ACTUAL

12  PHYSICAL PARTICIPANT, IT WOULD JUST BE PICTURES, RIGHT?

13           MR. BURKE:  OBJECTION, RELEVANCE.

14           THE COURT:  SUSTAINED.

15           THE DEFENDANT:  Q.  IF YOU WOULD DO A

16  PHOTOGRAPHIC LINEUP BEFORE A PHYSICAL, IT WOULD BE

17  SUGGESTIVE, WOULDN'T IT.

18           MR. BURKE:  OBJECTION, RELEVANCE.

19           THE DEFENDANT:  Q.  IT WOULD BE SUGGESTIVE,

20  WOULDN'T IT?

21           THE COURT:  SUSTAINED.

22       MR. WILLIAMS, WE'VE HEARD ENOUGH QUESTIONS NOW ABOUT

23  PHOTOGRAPHIC LINEUP.  IT'S BEEN EXPLORED COMPLETELY AND

24  THOROUGHLY IN THIS CASE AND NOT THROUGH THE SERGEANT.

25           THE DEFENDANT:  I HAVE A RIGHT TO ASK COMPLETELY

26  AND TOTALLY ABOUT THIS CASE.  I HAVE A RIGHT.

27           THE COURT:  THAT'S TRUE.  BUT THESE AREN'T THE

28  APPROPRIATE QUESTIONS ABOUT THESE WITH THIS WITNESS.

Exhibit 2

## CITY OF OAKLAND



ONE FRANK H. OGAWA PLAZA • 6TH FLOOR • OAKLAND, CALIFORNIA 94612

Office of the City Attorney
John A. Russo
City Attorney

(510) 238-3601
FAX: (510) 238-6500
TDD: (510) 839-6451

September 14, 2000

Antonio Williams, #JO5660
High Desert Prison
Facility C-1-104
PO Box 3030
Susanville, California 96127

Subject:   *Letter dated September 6, 2000 regarding Deputy District Attorney Daniel Burke*

Dear Mr. Williams:

I have reviewed your letter dated September 6, 2000 to determine whether the City Attorney's Office could provide some direct assistance in resolving your complaint as described in your letter.

It appears that the issues you have raised in your letter (i.e. public corruption, perjury, obstruction of justice, etc.) allegedly committed by Deputy District Attorney Daniel Burke, are best addressed in any appeal you may have already filed or may file seeking to overturn your conviction and/or sentence. As you are aware, the City Attorney's jurisdiction and authority rests within the City of Oakland. With respect to the prosecution and/or defense of criminal cases, that authority rests with the District Attorney's Office and Public Defender's Office, respectively.

Since it appears that your letter was also forwarded to the District Attorney's Office, all further responses to your concerns would appropriately come from their office.

Very truly yours,

JOHN A. RUSSO
City Attorney

JAR:kar
255579

*Ex̄h. I*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA          Dept. No. 9

Date: November 30, 2004      Hon. LARRY J. GOODMAN, Judge          Fil R. Cruz, Dep.Clk.
                                                                Not Reported, Reporter

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA | Counsel appearing for Plaintiff | No Appearances, Deputy District Attorney |
| Plaintiff | | |
| vs. | Counsel appearing | No Appearances |
| ANTONIO WILLIAMS | for Defendant | |
| Aka: JAMES JOHNSON | Probation Officer | None Present |
| Defendant | appearing | Deputy |

Nature of Proceedings:  ORDER OF THE COURT
                        RE: EX PARTE LETTER

Case No. 130594
PFN:  ALQ822
CEN:  7144079

The Court treating the document dated November 7, 2004 as a writ for habeas corpus, hereby orders the writ of habeas corpus is denied.  The document fails to state a prima facie case for relief.  The document received by the Court fails to state any legal basis to set aside or reverse the defendant's conviction.

### CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served **ORDER OF THE COURT, on ANTONIO WILLIAMS aka: JAMES JOHNSON, DOCKET # 130594** by placing copies in envelopes addressed as shown below and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

ANTONIO WILLIAMS
Aka: JAMES JOHNSON
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000
CDC or ID Number J05660

Dated: December 8, 2004

By:  _____
Fil R. Cruz
Deputy Clerk

J:\Courtrooms\Dept 09\Exparte Letter - Williams, Antonio.doc
(Rev. 03/03)

Exhibit 2

E.

CALIFORNIA CODE OF JUDICIAL ETHICS

## CANON 3

## A Judge Shall Perform the Duties of Judicial Office Impartially and Diligently.

### A. Judicial Duties in General

All of the judicial duties prescribed by law* shall take precedence over all other activities of every judge. In the performance of these duties, the following standards apply.

### B. Adjudicative Responsibilities

(1) A judge shall hear and decide all matters assigned to the judge except those in which he or she is disqualified.

*ADVISORY COMMITTEE COMMENTARY:*
*Canon 3B(1) is based upon the affirmative obligation contained in the Code of Civil Procedure.*

(2) A judge shall be faithful to the law* regardless of partisan interests, public clamor, or fear of criticism, and shall maintain professional competence in the law.*

(3) A judge shall require* order and decorum in proceedings before the judge.

(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require* similar conduct of lawyers and of all court staff and personnel* under the judge's direction and control.

(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, engage in speech, gestures, or other conduct that would reasonably be perceived as (1) bias or prejudice, including but not limited to bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, or (2) sexual harassment.

(6) A judge shall require* lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status against parties, witnesses, counsel, or others. This Canon does not preclude legitimate advocacy when race, sex, religion, national origin, disability, age, sexual orientation, socioeconomic status, or other similar factors are issues in the proceeding.

(7) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, full right to be heard according to law.* A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding, except as follows:

(a) A judge may obtain the advice of a disinterested expert on the law* applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

(b) A judge may consult with court personnel* whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.

(c) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.

(d) A judge may initiate ex parte communications, where circumstances require, for scheduling, administrative purposes, or emergencies that do not deal with substantive matters provided:

(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

(e) A judge may initiate or consider any ex parte communication when expressly authorized by law* to do so.

*ADVISORY COMMITTEE COMMENTARY:*
*The proscription against communications concerning a proceeding includes communications from lawyers, law professors, and other persons who are not participants in the proceeding, except to the limited extent permitted by the exceptions noted in Canon 3B(7).*
*This Canon does not prohibit a judge from initiating or considering an ex parte communication when authorized to do so by stipulation of the parties.*
*This Canon does not prohibit court staff from communicating scheduling information or carrying out similar administrative functions.*
*An appropriate and often desirable procedure for a court to obtain the advice of a disinterested*

*Terms with an asterisk (*) are defined in the Terminology section.