IN THE U.S DISTRICT COURT
THE NORTHERN CALIF

ANTONIO L. WILLIAMS
vs
W.J. SULLIVAN

FILED
AUG 2 3 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

NC

CASE NO.
C07-3376-CW

MOTION TO
AMEND
MOTION FOR
EVIDENTIARY
HEARING WITH
MAR 31 98 MOTION
TO DISMISS HEAR-
ING UNDOCUMENT-
ED PHOTO LINE UP
IN SUPPORT OF HAB-
EAS CLAIM: 9

PETITIONER COME BEFORE THE COURT WITH TITLED MOTION IN WHICH PETITION-ER IS ILLEGALY INCARCARATED. ON MAR 31 98 THERE WAS A MOTION TO DISMISS HEARING FOR THE PRESENTATION OF THE UNDOCUMENTED PHOTOGRAPHIC LINE UP SHOWN TO WITNESSES APR 8,97 BEFORE PHYSICAL LINE UP SETTING PETIT-IONER UP TO BE IDENTIFIED AS THE ASSAILANT SEE EXHIBITS 1,2, IN THE MAR 31 98 MOTION TO DISMISS HEARING HELD FOR THE UNDOCUMENTED PHOTO-LINE UP THE PROSECUTOR

1.

Dep. D.A WILLIAM BALDWIN with-
held THE undocumented photo-
grapic Lineup Displays From The
Hearing And ALong with The pre-
trial Hearing Judge Vernon Naka-
hara refused To Allow Subpenaed
O.P.D SGT. Edward Juarez who First
revealed A photographic Lineup was
conducted in Petitioner Parole
Revocation Hearing where he testif-
ied therein "we did A photo Line up"
enter into THE courtroom To Testify
or crossed examined regarding or
Any other witnesses see Exhibits 3,4
Mar 31,98 Motion To Dismiss Hearing
Transcript of Motion To Dismiss Hear-
ing An was denied by Abused Discr-
etion of And by THE Assemblance
of THE undocumented photo Displayin
bought Forth New Evidence see
Exhibit 5 undocumented photo Dis-
plays. "This info require A Evid-
entiary Hearing be held, Conviction
vacated

2.

And this case was never suppose
to been bought to a jury trial no
jury wouldve convicted me on the info, evidence
facts withheld or now known → see
due process right denied miller vs
pate, 386 u.s. 1 (1967) u.s. supreme court.
case.
due process conviction of innocent
person in miscarriage of justice
u.s supreme court case schlup vs
delo, 513 u.s. 298 (1995)

due process suppressed evidence
favorable to petitioner brady vs
maryland, 373 u.s. 83 (1963)

prosecution failed to disclose
exculpatory evidence kyles vs whitley
514 u.s. 419 (1995)

cross examination of prosecution
witnesses unfairly restricted by
the court davis vs alaska, 415 u.s.
308 (1974), olden vs. kentucky 488 u.s.
284 (1973)

3.

Defense Right to present evidence
or witness testimony denied Chambers
vs Mississippi 410 u.s. 284 (1973)

Confrontation And cross Examination
Rights denied pointer vs texas, 380 u.s. 400
(1965)

by Foregoing facts A evidentiary
hearing must beheld.

Respectfully submitted,

I declare under
penalty of perjury
Dated: 8-20-07  All true.                    Ontonio Williams

4.

*Exhibit 1*                                      000174

OAKLAND POLICE DEPARTMENT
455 - 7th Street
Oakland, CA 94607

**OPD** ADDITIONAL INFORMATION REPORT

RD # 97-27737

| CRIME Robbery | [ ] SUPPLEMENTAL 211P.C | INCIDENT # | V1 | VICTIM LAST, First, Mid. |
|---|---|---|---|---|

| SUSPECT LAST, First, Mid. | INCIDENT LOCATION 3241 Lakeshore | DATE OF THIS REPORT 9APR97 | ORIGINAL DATE REPORTED |
|---|---|---|---|

PROPERTY (and/or NARRATIVE)
ITEM TYPE, BRAND, MODEL #, SIZE, COLOR, MARKS, ETC

| ITEM # | QNTY. | | SERIAL # | VALUE |
|---|---|---|---|---|

On 8Apr97, 1830 Hrs. I went to the jail to put together a
physical line-up, which would include Antonio Williams AKA. James
Johnson. I had been advised earlier by the jail supervisor, Sgt.
R. Stewart, that Williams had stated he was not going to
willingly attend the line-up. Sgt. Stewart explained to Williams
that he would draw attention to himself if he had to be
physically forced to attend the line-up. Sgt. Thurman had also
been to the jail and advised Williams that it would be best if he
attended the physical line-up without having to be forced. Sgt.
Hollomon also did the same. Williams even stated we would have
to fight him to get him to attend and he would do whatever he had
to do if anyone tried to force him to do anything. Sgt. Brock
and I went to the jail and also tried to convince Williams to
willingly comply, but he still refused. I handcuffed Williams
and tried to walk him throughout the jail to pick his fillers.
He refused to pick any fillers. He was brought back to the area
near his cell, and we attempted to pick his fillers. Williams
was insisting we were setting him up and he wanted a lawyer to
witness the line-up. We explained to him he did not have the
right to have a lawyer as present as he was not charged with the
crime he was being lined up for. He was so insistent, an attempt
was made to contact the public defenders office, but there was no
one present. He stated he wanted to see the law in "black and
white." I showed him the Point of View issued by the Alameda
County District Attorney's Office, which cited the case law.
Williams was not satisfied and was still screaming at the other
people who agreed to attend and intimidating them to refuse. We
were unable to get any other prisoners to attend. We began to
arrange for police officers in civilian clothing to stand in the
line-up, when Williams told me he would comply but he wanted to
pick his own fillers. Up to this point he was very hostile,
yelling and threatening to resist with force from standing in the
line-up. Williams picked his fillers.

The physical lineup was held at the Oakland Police Department
Lineup Room. The line was comprised of the following people
selected from the general population of the Oakland City jail.

Lineup:

| | | | |
|---|---|---|---|
| 1- | Scott, Markell | MB | |
| 2- | Everett, Milton | MB | AMW667 |
| 3- | Johnson, James | MB | ALQ822 |
| 4- | McGowan, Andrew | MB | UIB399 |
| 5- | Copes, Eugene | MB | UHY450 |
| 6- | Richardson, Antonio | MB | AQS167 |

*Exhibit 2*

# REPORT OF INTERVIEW

## I. DATE: 3/4/98

CLIENT:
ATTY: ANTONIO WILLIAMS
INV. #: MCCORMICK
DOCKET: I-98-026
Dictation Date: 3/4/98   130594

Date Typed: March 9, 1998

SUBJECT: ANTONIO RICHARDSON AQS 167

INVESTIGATOR: LABEAUX

Richardson states that he participated in a physical lineup on April 8, 1997. Richardson states that a Black Male Jailor and two Plainclothes White Officers entered the Pod. Richardson states that Client was with the three Officers.

Richardson states that one of the Plainclothes Officers stated to Client "Pick somebody out for a lineup".

Client then said "I don't want to pick anybody, you all trying to set me up."

The same officer then responded, well go on and pick somebody out and stop playing with us."

Richardson states that the cop and Client began arguing back and forth about how Client was saying that he was being framed by these guys.

The same officer then pointed to Richardson and said "How about him, he looks similar to you"

Client then said, directing his comment to Richardson, "no, Tone, don't get involved, they're trying to set me up."

Richardson states that the four, the jailor, the two Plainclothes Officers and client then left the Pod.

Richardson states that he cannot explain why they left and that it did not seem like the Client was not trying to cooperate with them, he just did not want to be involved with picking out fillers for his lineup.

Richardson states about five or ten minutes later the Black Male Jailor and two Plainclothes Officers returned with Client, however one of the Plainclothes Officers was not the same one, he was replaced with a Black Male Plainclothes Officer. Richardson recalls that Client then said, when they entered the Pod,

continued.......

REPORT OF IN

CLIENT: ANTONIO WILLIAMS
SUB: ANTONIO RICHARDSON                    P. 2                    INV. #: I98-026

0013545

"Come on blood", referring to Richardson, "come on man".

They then walked out of the Pod to the hallway area.  Throughout their walk, Client kept saying,

"I want an attorney here.  They're trying to set me up and I don't want to be involved."

Richardson states that they were in the hallway of City Jail and the officers were having each of the fillers say something however Richardson cannot recall what he was told to recite but that Client kept saying,

"Man they trippin', I ain't did nothin' like this.

Richardson states that the Client and the White Male Officer were getting into it again.  The Client and White Officer were down the hallway near the bars while Richardson and the other fillers waited further into the hallway.  Richardson states that they were eventually told to enter the room and stand in front of some numbers and each person was asked to approach the mike, turn this way and turn that way.

Richardson recalls that everyone complied with what was asked of them including the Client.  Richardson recalls that Client was calm and complete and did not cause a problem.

Previous to entering into the physical lineup room, Client did seem a little emotional in that he had been arguing back and forth with the two Plainclothes Officers.  The White Plainclothes Officer was saying all kinds of stuff to the Client and Client was trying to get back into it with the White Male Plainclothes Officer.  Richardson recalls trying to get Client's attention to tell him to just calm down and be cool.

Richardson states that he has been incarcerated currently from Feb. 13, 1998 to 3/14/98 for a petty theft and traffic tickets.

Richardson states that he also is appearing later this month on a 2/98 incident where he was cited on West St. in Oakland for knocking on a building or establishment where narcotics were being sold.

Richardson states that he is on 3-year unsupervised probation for 11350 charge in Alameda County.  Richardson states he has 40 days to go on the probation for that particular charge.

TLB:or



Exh 3

JAY B. GASKILL
PUBLIC DEFENDER
ALAMEDA COUNTY COURTHOUSE
OAKLAND, CALIFORNIA 94612
(510) 272-6600

FILED
ALAMEDA COUNTY

MAR 23 1998

RONALD G. OVERHOLT, Exec. Off./Clerk
By _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

THE PEOPLE OF THE STATE
OF CALIFORNIA,

      Plaintiff,

v.

ANTONIO WILLIAMS,

      Defendant.
_____/

Dept. No. 7

Docket No. 130594

Hearing Date: March 31, 1998
Time: 2:00 p.m.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INFORMATION

**INTRODUCTION:**

By complaint filed on April 15, 1997, defendant Antonio Williams (also known as James Johnson) was charged with the robbery of Gustavo Contreras on March 27, 1997 (Pen. Code, § 211), and with nine prior felony convictions including two alleged as "strikes" (Pen. Code, §§ 667(e)(2), 1170.12(c)(2)). After a preliminary examination on June 30, 1997, he was held to answer to that charge.

By information filed in this Court, defendant is now charged as he was in the complaint. In this nonstatutory motion, defendant requests that the information be dismissed on the ground that his substantial right to discovery was violated at the preliminary examination.

1 │ **STATEMENT OF FACTS:**

2 │        **A. Testimony at Preliminary Examination**

3 │        Gustavo Contreras was the only witness called by the prosecution at the preliminary

4 │ examination. On direct examination, he testified as follows:

5 │        At around 10:45 a.m. on March 27, 1997, he was working as a teller at Mission

6 │ National Bank on MacArthur Boulevard in Oakland. (R.T. 6-7.) A man entered the bank and went

7 │ to teller window number two. (R.T. 7.) Contreras went from a side desk to that window and asked

8 │ the man, "Can I help you?" (R.T. 7.)

9 │        The man handed Contreras a note which read, "I have a gun. Give me the money."

10 │ (R.T. 7-8.) Contreras told the man that his teller window was at the end of the windows and that he

11 │ would help him there. (R.T. 8.) The two went to that window. (R.T. 8.) Contreras dropped his keys.

12 │ (R.T. 8.) The man told him to hurry up. (R.T. 8.)

13 │        Contreras gave the man a stack of $20 bills wrapped in a $2000 bundle. (R.T. 8-9.)

14 │ When the man asked for large bills, Contreras gave him loose $50 and $100 bills. (R.T. 8-9.)

15 │ Altogether Contreras gave the man about $4900. (R.T. 10.) As soon as the man got the money, he

16 │ walked out of the bank. (R.T. 9-10.)

17 │        During the incident, the man twice told Contreras, "Don't be a hero." (R.T. 9.)

18 │ Contreras gave the man the money because after receiving the note he was scared. (R.T. 9-10.)

19 │        In court at the preliminary examination, Contreras identified defendant as the robber.

20 │ (R.T. 10.)

21 │        On cross-examination, Contreras testified in pertinent part as follows:

22 │        When he walked from the side desk to the teller window number two, Contreras

23 │ noticed just the figure of the man. (R.T. 14.) At that window, the man handed him the note

24 │ immediately and Contreras told him to go to the other window; they were at window number two

25 │ for only a couple of seconds. (R.T. 14.) Contreras' window was about 10 feet away. (R.T. 14, 19-

26 │ 20.) When Contreras was removing his keys there, he was looking at his cash drawer but got a

27 │ momentary glimpse of the man. (R.T. 19-20.) It took a "few seconds" for the man to come into

1  possession of the money. (R.T. 21.) Contreras estimated that the man was at his window only "about

2  as minute or two." (R.T. 21.)

3        Contreras described the robber as a black male with a medium complexion, about six

4  feet tall, weighing about 200 pounds, and wearing a blue baseball cap, a gray jacket, a white

5  basketball jersey and a blue T-shirt. (R.T. 16-18.) There was nothing distinctive about his face.

6  (R.T. 17-18.)

7        A week or two after the incident, Contreras attended a lineup conducted by Sergeant

8  Juarez of the Oakland Police Department. (R.T. 24-27.) The lineup was made up of six suspects.

9  ( R.T. 28-29.) Each said, "Don't be a hero." (R.T. 29.) On his lineup card, Contreras put a question

10  mark on suspect number three. (R.T. 30.) When asked to explain the question mark, Contreras said

11  he "knew" that suspect number three was the robber but that there was "something different" about

12  him -- namely, that the man in the lineup was clean shaven while the robber had a scruffy beard on

13  both sides of his face,[1] and that the man in the lineup seemed shorter than the robber. (R.T. 30-33.)

14  Contreras also said he recognized the voice of suspect number three. (R.T. 37.)

15        Contreras viewed the suspects in the lineup for several minutes. (R.T. 35.) He

16  therefore had more of an opportunity to view suspect number three at the lineup than he did the

17  robber at the bank. (R.T. 36.) But he did not know if attending the lineup made it easier for him to

18  identify defendant in court. (R.T. 35.)

19       **B. Violation of Right to Discovery**

20        Before the preliminary examination, the prosecution failed to disclose the following

21  crucial information to defendant:

22        1. Before conducting the physical lineup on April 8, 1997, Sergeant Edward Juarez

23  or another employee of the Oakland Police Department presented a photographic lineup to Gustavo

24

25

26      [1] When first asked on cross-examination whether the robber had "any facial hair of any kind,"
Contreras responded, "Not that I can recall." (R.T. 17.) However, when later asked to explain his question

27  mark on the lineup card, Contreras testified that the robber had the scruffy beard and that he did not recall
having been asked earlier about facial hair. (R.T. 31.)

1   Contreras and the other two witnesses percipient to the robbery. The photographic lineup included
2   a photograph of defendant. It did not include a photograph of any other person who stood in the
3   physical lineup.

4            2.  A copy of the robbery note. According to page 1 of the incident report of R. Aven,
5   the robbery note was recovered by technician Gribi.

6            3.  A copy of any report(s) by technician Gribi or any other technician concerning this
7   case. According to page 3 of the incident report of R. Aven, technician Gribi "processed the scene."
8   It is likely that Gribi or some other technician dusted the robbery note and surfaces at the bank for
9   fingerprints.

10            4.  A copy of all handwritten or typewritten notes and logs of all employees of the
11  Oakland Police Department who have investigated this case. Defendant now has information that
12  Sergeants Aguirre and/or Juarez went to Mission National Bank on the day of the robbery, spoke
13  with the witnesses there, showed them a photograph of the robber created from the bank's
14  surveillance videotape, and took the videotape into evidence. However, the typewritten log of
15  Sergeant Aguirre does not mention any visit to Mission National Bank. And the only written report
16  of any activity by Sergeant Juarez disclosed to defendant thus far is his two-page log re the lineup
17  on April 8, 1997.

18            5.  The name, address and telephone number of employees of the Federal Bureau of
19  Investigation who investigated this robbery, and the written reports of such persons including but
20  not necessarily limited to statements taken from witnesses to the robbery.. Defendant now has
21  information that at least one FBI agent was called to the bank after the robbery, assisted or
22  participated in the investigation conducted by the Oakland Police Department, and took a statement
23  from complaining witness Gustavo Contreras.[2]

24

25

26

27            [2] This list is based on information known to defendant at this time. At the time of the hearing
    on the motion, defendant may add to the list if other items become known to him.

4

1 | **ARGUMENT:**

2 | **THE INFORMATION SHOULD BE DISMISSED, BECAUSE THE**
**PROSECUTION FAILED TO DISCLOSE CRUCIAL INFORMATION**
3 | **ABOUT THE CASE BEFORE THE PRELIMINARY EXAMINATION**

4 | At the preliminary examination, the defendant has the fundamental rights to full and

5 | effective cross-examination of adverse witnesses and to present affirmative evidence on his own

6 | behalf. (U.S. Const., Amends. VI, XIV; Cal. Const., art. I, §§ 7, 15; Pen. Code, §§ 865, 866;

7 | *Jennings v. Superior Court* (1966) 67 Cal.2d 867.)

8 | Under constitutional guarantees to due process, the defendant is also entitled to

9 | disclosure by the prosecution of all favorable evidence that is material to guilt or to punishment.

10 | (U.S. Const., Amend. XIV; Cal. Const. art. I, §§ 7, 15; *Brady v. Maryland* (1963) 373 U.S. 83, 87;

11 | *People v. Ruthford* (1975) 14 Cal.3d 399.) The prosecution's duty to disclose material favorable to

12 | the defense exists "'regardless of whether there has been a request for such evidence..., and

13 | irrespective of whether the suppression was intentional or inadvertent.'" (*Izazaga v. Superior Court*

14 | (1991) 54 Cal.3d 356, 378.)

15 | "[O]ne legitimate goal of discovery is to obtain information 'for possible use to

16 | impeach or cross-examine an adverse witness'...[a]bsent some governmental requirement that

17 | information be kept confidential for the purpose of effective law enforcement, the state has no

18 | interest in denying the accused access to all evidence that can throw light on issues in the case, and

19 | in particular it has no interest in convicting on the testimony of witnesses who have not been as

20 | rigorously cross-examined and as thoroughly impeached as the evidence permits." (*People v.*

21 | *Memro* (1985) 38 Cal.3d 658, 677, citing *People v. Riser* (1956) 47 Cal.2d 566, 586.) "Suppression

22 | of substantial material evidence bearing on the credibility of a key prosecution witness is a denial

23 | of due process." (*People v. Morris* (1988) 46 Cal.3d 1, 30.)

24 | Where the prosecution has failed to disclose material information which the defendant

25 | could have used to attack the credibility of a key prosecution witness at the preliminary

26 | examination, the defendant may make a nonstatutory notion to dismiss the information. (*Stanton v.*

27 |

1    *Superior Court* (1987) 193 Cal.App.3d 265, 269-270; see also *Currie v. Superior Court* (1991) 230

2    Cal.App.3d 83, 89-91; *Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586, 1596.)

3              In *Miller v. Superior Court* (1979) 99 Cal.App.3d 381, the defendant moved for

4    discovery of the address of an informant who was a material witness to the charged sale of a

5    controlled substance. After the District Attorney objected "for the obvious protection of the

6    informant," the court denied the motion. At the preliminary examination, the magistrate precluded

7    the defendant from questioning the witness about his address. The superior court denied the

8    defendant's motion to set aside the information pursuant to Penal Code section 995.

9              The Court of Appeal held that the motion to dismiss the information should have been

10   granted. The court reasoned that the magistrate had violated the defendant's right to cross-

11   examination. The court noted that although significant cross-examination had taken place on other

12   issues, including a recent arrest for controlled substances and a motive to lie, the defendant was

13   deprived of

14              "a *full* opportunity to test the weight and credibility of the witness. The
                possible additional impeachment via the witness' bad reputation for
15              veracity or for extensive narcotics dealing might well have tipped the
                scales of veracity and resulted in the magistrate's disbelief of the
16              witness and refusal to bind over the defendant. *Defendant was entitled
                to a preliminary hearing wherein the veracity of the witness was fully
17              and properly tested after revelation of properly discoverable
                information about the informant.*" (*Id.*, at pp. 386-387; emphasis
18              added.)

19             In *People v. Mackey* (1985) 176 Cal.App.3d 177, the prosecution failed, prior to the

20   preliminary examination, to disclose to the defendant a statement taken from the principal witness

21   against him. The defendant did not discover the withholding of the statement until jury selection had

22   commenced on the information. He made a motion to dismiss the information pursuant to Penal

23   Code section 995, which the superior court denied.

24             The Court of Appeal held that the information should have been set aside. It reasoned

25   that the effect of the withholding of the statement was to prevent the defendant from effectively

26   cross-examining the witness during the preliminary examination and thus to violate his rights to

27   confrontation and due process:

Justice requires that defendant be given a fair hearing in accordance with due process of law. It also requires that the People obey, follow and comply with court orders issued to insure the orderly and constitutional conduct of criminal proceedings. Their failure to do so in the this case was without excuse or explanation. The detriment to appellant was obvious--critical evidence which was required to be produced and was necessary for effective cross-examination was unlawfully concealed and withheld not only from the defendant, but also from the committing magistrate. The failure to disclose the witness' statement operated as a deprivation of due process requiring that the charges be dismissed. (*Id.*, at p. 187.)[3]

In *Stanton v. Superior Court, supra,* 193 Cal.App.3d 265, the prosecution failed to disclose an investigative report which contained statements from percipient witnesses inconsistent with their testimony at the preliminary examination. If believed, the earlier statements would have supported an inference that the defendant had not acted with gross negligence and thus was guilty of only misdemeanor rather than felony vehicular manslaughter. The superior court denied the defendant's nonstatutory motion to dismiss the information.

The Court of Appeal held that the superior court should have stricken the allegation of gross negligence from the information. It reasoned that the defendant "was denied a substantial right by the prosecution's failure to disclose the investigative report...The magistrate, having heard the impeachment of the three key witnesses, might well have stricken the gross negligence allegation..." (*Id.*, at pp. 271-272.)

Before the preliminary examination in the instant case, the prosecution failed to disclose numerous pieces of information which defendant could have used to cross-examine and impeach sole prosecution witness Gustavo Contreras. No less than in *Miller, Mackey* and *Stanton,* the failure to disclose such information had the effect of preventing defendant from effectively cross-examining an adverse witness and thus of violating defendant's fundamental rights to confrontation and due process.

---

[3] In *Mackey* the defendant had obtained a discovery order requiring the prosecution to disclose statements of all witnesses. The Court of Appeal held that under the circumstances of the case "due process required disclosure even without the discovery order" under *Brady* and *Ruthford.* (*Id.*, at p. 187, fn. 11.)

1          Defendant recognizes that the Court of Appeal has held that upon a nonstatutory
2   motion to dismiss for failure to disclose impeachment information, the defendant is required to show
3   prejudice from the violation of his substantial rights. (*Merrill v. Superior Court, supra,* 27
4   Cal.App.4th at pp. 1594-1597 [interpreting *Stanton v. Superior Court, supra,* 193 Cal.App.3d at pp.
5   271-272, and *Currie v. Superior Court, supra,* 230 Cal.App.3d at p. 93].) In other words, the court
6   hearing the motion must "look to the materiality of the nondisclosed information and what effect
7   it had on the determination of probable cause." (*Merrill v. Superior Court, supra,* 27 Cal.App.4th
8   at p. 1596.)

9          However, prejudice is **presumed** where the violation of substantial rights at the
10   preliminary examination is raised before trial on a motion under Penal Code section 995, for upon
11   setting aside of the information the matter can be expeditiously returned to the magistrate for refiling
12   of the complaint and proceedings free of the charged defects. (*People v. Coleman* (1988) 46 Cal.3d
13   749, 773; *People v. Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) The same presumption of prejudice
14   also should apply where the violation of substantial rights is raised before trial on a nonstatutory
15   motion to dismiss the information, for the matter likewise can be expeditiously returned to the
16   magistrate for refiling of the complaint and proceedings free of the charged defects. In other words,
17   the procedural vehicle by which the violation of substantial rights is established should not
18   determine whether the defendant is entitled to a presumption of prejudice.

19          In *Pompa-Ortiz,* the Supreme Court decided to apply the presumption of prejudice
20   from the denial of a motion under Penal Code section 995 only when the issue was raised before
21   trial, **not** because the motion was based on a statute, but because it already had limited the
22   presumption of prejudice to the denial of other types of motions when they were raised before trial.
23   (*Id.,* at p. 529, citing cases re motions re change of venue and for appointment of attorney of
24   choice].) To the extent that *Merrill* is inconsistent with *Pompa-Ortiz,* it should not and indeed
25   cannot be followed. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456.)

26          Assuming arguendo that defendant must show prejudice, he need only show that it is
27   reasonably possible that the magistrate would not have held him to answer if he had impeached

1   Contreras with the information belatedly disclosed. (*Chapman v. California* (1967) 386 U.S. 18, 24;

2   *People v. Ruthford, supra,* 14 Cal.3d at p. 409, fn. 3.) As noted above, Contreras was the sole

3   prosecution witness at the preliminary examination. The failure of the prosecution to disclose the

4   information gave its only witness a false aura of veracity. (See, e.g., *People v. Turner* (1994) 8

5   Cal.4th 137, 201 ["No witness... is entitled to a false aura of veracity"].) Had Contreras been

6   impeached with the information, the magistrate may very well have determined that his testimony

7   was not sufficiently credible to support a holding order. (In addition to authorities cited above, see

8   *People v. Espinoza* (1977) 73 Cal.App.3d 287 [conviction reversed because defendant not allowed

9   to impeach prosecution witness with probationary status].)

10   **CONCLUSION:**

11         For the foregoing reasons, the information should be dismissed.

12         DATED: March 20, 1998

13                           Respectfully submitted,

14                           JAY B. GASKILL
                               PUBLIC DEFENDER

15

16                           Harold G. Friedman
                          Chief Assistant Public Defender

17

18

19                           Michael McCormick
                          Assistant Public Defender
                          California State Bar No. 77355

20

21   Karen Nance
    Attorney at Law
    Trial Attorney

22

23

24

25

26

27

9

00131

ACKNOWLEDGMENT OF RECEIPT

I hereby acknowledge receipt
of a copy of this document.

OFFICE OF THE DISTRICT ATTORNEY
COUNTY OF ALAMEDA

Dated: _____

By: _____

Law Offices
# Alameda County Public Defender

001151

Superior Court
1401 Lakeside Drive, 4th floor
Oakland, CA 94612-4277
(510) 272-6600



11  P4:54

Jay B. Gaskill
Public Defender
Harold G. Friedman
Chief Assistant

## INFORMAL DISCOVERY REQUEST

March 11, 1998

TO:     Dan Burke
        Deputy District Attorney

FROM:   Mike McCormick
        Assistant Public Defender

CASE:   Antonio Williams aka James Johnson

COURT NO: 130594

NEXT COURT DATE: March 31, 1998, for Motion to Dismiss Information

Pursuant to Penal Code sections 1054.1 and 1054.5 as well as *Brady v. Maryland* (1963) 373 U.S. 83, I hereby request discovery of the following items concerning the robbery at the Mission National Bank on March 27, 1998, with which defendant Antonio Williams is charged in the above case:

**1. A copy of the robbery note.** According to page 1 of the incident report of R. Aven, the robbery note was recovered by technician Gribi.

**2. A copy of any report(s) by technician Gribi or any other technician concerning this case.** The discovery we have received thus far does not include any such report(s). According to page 3 of the incident report of R. Aven, technician Gribi "processed the scene." I am informed and believe that Gribi or some other technician dusted surfaces at the bank for fingerprints.

**3. A copy of any reports resulting from the report(s) by the technicians.** For example, if any latent fingerprints were lifted, any report(s) of comparisons of those prints with known fingerprints of other persons, including defendant.

**4. A copy of all handwritten or typewritten notes and logs of all employees of the Oakland Police Department who have investigated this case.** I am informed and believe

001152

↓

that Sergeants Aguirre and/or Juarez went to Mission National Bank on the day of the robbery, spoke with the witnesses there, showed them a photograph of the robber created from the bank's surveillance videotape, and took the videotape into evidence. However, the typewritten log of Sergeant Aguirre does not mention any visit to Mission National Bank. (It may be that we have been given only his log for the robbery of American Savings Bank.) And the only written report of any activity by Sergeant Juarez that we have is his two-page log re the lineup on April 8, 1997.

5. **A copy of the bank's surveillance videotape.** As mentioned above, I am informed and believe that on the day of the robbery a bank employee gave the videotape to an OPD sergeant who presumably booked it into evidence. A blank videocassette is enclosed.

6. **A copy of the videotape of the lineup on April 8, 1997.** According to page 2 of the log of Sergeant Juarez, he videotaped the lineup. A second blank videocassette is enclosed.

7. **Copies of all phonographs taken of the lineup on April 8, 1997.** According to page 2 of the log of Sergeant Juarez, Sergeant Aguirre took photographs of the lineup.

8. **A copy of all booking records from the Oakland City jail based on the arrest of defendant on or about April 6, 1997.** This includes, but is not necessarily limited to, the property receipt issued to defendant. These records should show that defendant was in custody not only for a battery on his brother Mark, but also for robbery. The records therefore support a defense argument that the police should have honored the request of defendant for an attorney at the lineup. *Bail Info report*

9. **A copy of the photographs from the bank surveillance videotape and from the Oakland Tribune on March 28, 1998.** According to pages 1 and 2 of the log of Sergeant Aguirre, these photographs were shown to Mark Williams and Verna Edwards.

10. **The name, address and telephone number of any employees of the Federal Bureau of Investigation who investigated this robbery, and the written reports of such persons.** I am informed and believe that at least one FBI agent was called to the bank after the robbery and assisted or participated in the investigation conducted by OPD.

11. **Inspection of the file kept by the Robbery detail of OPD regarding this robbery.** It is possible that the file contains other information of which I am not aware and therefore am not in a position to request specifically.

12. **Inspection of all items booked into evidence.**

Thank you in advance for your cooperation in complying with this request promptly. If you have any questions about any of the items requested, please do not hesitate to telephone me at 272-6643. Please call me to arrange a time for inspection of the items booked into evidence and the file in the Robbery detail.

3/31

1  JAY B. GASKILL
   PUBLIC DEFENDER
2  ALAMEDA COUNTY COURTHOUSE
   OAKLAND, CALIFORNIA 94612
3  (510) 272-6600

**FILED**
ALAMEDA COUNTY

MAR 23 1998

RONALD G. OVERHOLT, Exec. Off./Clerk
By_____

4

5

6

7          SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

8

9  THE PEOPLE OF THE STATE
   OF CALIFORNIA,                          Dept. No. 7

10          Plaintiff,                     Docket No. 130594

11  v.                                     Hearing Date: March 31, 1998
                                           Time: 2:00 p.m.
12  ANTONIO WILLIAMS,

13          Defendant.

14  _____/

15              **ORDER SHORTENING TIME**
                  **(CCP SECTION 1005)**
16

17          GOOD CAUSE APPEARING, IT IS HEREBY ORDERED that the time for

18  defendant to file his Memorandum of Points and Authorities in Support of Motion to Dismiss

19  Information is shortened from 10 days to 8 days, so that defendant shall file same by March 23,

20  1998.

21          DATED: 3/23/98

22

23                              JUDGE OF THE SUPERIOR COURT

24

25

26

27

*E x h 3*

Law Offices

001157

# Alameda County Public Defender



Main Office
1225 Fallon Street
Oakland. CA 94612-4277
(510) 272-6600

Jay B. Gaskill
Public Defender
Harold G. Friedman
Chief Assistant

March 23, 1998

Antonio Williams
    aka James Johnson
PFN: ALQ822
Santa Rita Jail
5325 Broder Boulevard
Dublin, CA 94568

Dear Mr. Williams:

Enclosed is your copy of the Memorandum of Points and Authorities in Support of Motion to Dismiss Information which I filed on your behalf.

As you can see, I am asking the judge to dismiss the case because before the preliminary examination the prosecution failed to disclose to the defense crucial information about the case, including the photographic lineup shown to the witnesses to the robbery. The District Attorney presumably will respond to the motion in writing, and the judge will listen to argument when you come to court for the hearing on the motion on March 31, 1998.

If the judge grants the motion, your case will be dismissed. But under the law the District Attorney can still file another complaint against you and start the whole process over in municipal court. If the judge denies the motion, your case will be scheduled for a "disposition and setting" or a hearing on a motion to suppress evidence. Attorney Karen Nance will be transferred soon to another assignment, so your case will reassigned to another attorney on our felony trial staff.

If you have any questions about the motion, please feel free to call me. My direct telephone number is 272-6643.

Sincerely,

LAW OFFICES
ALAMEDA COUNTY PUBLIC DEFENDER

Michael McCormick
Attorney at Law

enclosure

1 | THOMAS J. ORLOFF
District Attorney
2 | County of Alameda
900 Courthouse
3 | 1225 Fallon Street
Oakland, CA 94612-4292
4 | [510] 272-6222

**FILED**
ALAMEDA COUNTY

MAR 2 6 1998

CLERK OF THE SUPERIOR COURT
By _Gail Strang_ DEPUTY

995 Date: March 31, 1998

5 | William M. Baldwin
Assistant District Attorney
6 | [State Bar # 42696]

7

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

8

## COUNTY OF ALAMEDA

9

10 | THE PEOPLE OF THE STATE OF CALIFORNIA,        )
11 |                                                )
     |                                                )
12 |                        v.                       )     No. 130594
     |                                                )
13 | ANTONIO WILLIAMS,                               )     Department No. 7
     |                                                )
14 |                               Defendant.        )
     |                                                )

15

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DENY MOTION UNDER SECTION 995 OF THE PENAL CODE, WITH PREJUDICE

18

**ARGUMENT:**

19

20 |     I.   The records of this office reveal that service of defendant's moving papers was
accomplished on March 23, 1998.

22 |     Such service certainly does not comport with the requirements of Rule 227.5(a) of the
California Rules of Court.

24 |     Accordingly, defendant's motion ought to be denied with prejudice. Rule 227.5(b); **People
v. Lewis** (1977) 71 Cal.App.3d 817; **People v. Hallman** (1989) 215 Cal.App.3d 1330, 1342;
**People v. Davis** (1989) 215 Cal.App.3d 1348, 1350.   See **People v Casillas** (1990) 218

Office of the
*District*
*Attorney*
lameda County

27

28

73

1 | Cal.App.3d 1365.*

2 |         II. It is unknown where the defense gets the information it now claims was denied it at

3 | preliminary examination. Be that as it may, nothing exculpatory appears in the list the defense now

4 | provides. Accordingly the *Brady* and *Ruthford* cases have no bearing on this matter.** What

5 | governs is Penal Code § § 1054 *et seq.* which provide the sole basis for discovery in criminal

6 | cases. Penal Code § 1054.5(a). By the very language of those provisions, they are applicable to

7 | *trial* not to *preliminary hearings*. See Penal Code § 1054.5(b): the timing for discovery

8 | compliance is incompatible with preliminary hearing time limits. Almost all in- custody

9 | preliminaries, for example, would have been completed before the time for compelling discovery

10 | occurred. See Penal Code § 859b.

11 |         For the foregoing reasons, it is respectfully urged that defendant's motion be denied.

12 |         Dated: March 24, 1998

13 |

14 |                                         THOMAS J. ORLOFF
                                            District Attorney

15 |

16 |

17 |                                    by
                                            William M. Baldwin
                                            Assistant District Attorney

18 |

19 |

20 |

21 |

22 |
       _____

23 |       *The defense has obtained an order shortening time — with no notice to us. This is the
       second untimely motion to dismiss filed by the defense in *this* case. (The first was filed on
24 |   January 12th, for January 20th.) This is also the third pretrial motion filed in this matter — not
       counting the defendant's own hand-written efforts. (A 995 motion was denied in this
25 |   department on December 12, 1997.) With that level of involvement in this case, it it difficult to
       understand why this brief could not have been timely filed. Since the order shortening time
26 |   appears to have been improvidently granted, we move the defense brief be stricken.

27 |         **Brady v. Maryland (1963) 373 U.S. 83; People v. Ruthford (1975) 14 Cal.3d 399.*

28 |                                            -2-

Exh 4 MARCH 31, 1998

```
 1

 2

 3        DISTRICT COURT OF APPEAL OF THE STATE OF CALIFORNIA

 4             IN AND FOR THE FIRST APPELLATE DISTRICT

 5                          ---oOo---

 6                                            COPY

 7

 8        THE PEOPLE OF THE STATE OF CALIFORNIA,

 9                              Plaintiff and
                               Respondent,
10

11           vs.                              NO.

         ANTONIO WILLIAMS                     ALAMEDA COUNTY
12                                            NO. C130594

13                              Defendant and
                               Appellant.
14        _____/

15

16                        MARCH 31, 1998

17

18              REPORTER'S TRANSCRIPT ON APPEAL
           FROM FINAL JUDGMENT OF THE SUPERIOR COURT
                OF THE STATE OF CALIFORNIA,
19             IN AND FOR THE COUNTY OF ALAMEDA

20            HONORABLE VERNON K. NAKAHARA, JUDGE

21                          ---oOo---

22
         FOR THE PLAINTIFF AND RESPONDENT:
23       BILL LOCKYER
         Attorney General of the
24       State of California
         6000 State Building
25
         THE DEFENDANT AND APPELLANT:
26       in propria persona

27

28
```

1          <u>MARCH 31, 1998</u>

2                  ---oOo---

3          THE COURT:  Okay.  On the Antonio Williams

4     matter, where are we on that?

5          MR. McCORMICK:  Well, let me approach the

6     bench for a sec.

7                  (Off-the-record discussion.)

8          THE COURT:  Antonio Williams.

9          THE BAILIFF:  Williams.

10         THE COURT:  On the record in the

11    Antonio Williams matter.

12         Please state your appearance for the

13    record, Mr. Williams being present in custody here

14    in court.

15         MR. BALDWIN:  Bill Baldwin.

16         MR. McCORMICK:  Michael McCormick for

17    Mr. Williams.

18         THE COURT:  All right.  And this is the

19    non-statutory motion to dismiss, basically arguing

20    that the defendant's substantive rights with

21    respect to discovery were violated and, therefore,

22    this case should be dismissed.

23         MR. BALDWIN:  Your Honor, we have a number

24    of parole issues to raise, not really directed to

25    the defense brief I'd like to address.  I'd like

26    the Court to find those before we get into the

27    factual issues.

28         THE COURT:  All right.

```
 1         MR. BALDWIN:  As I indicated in my reply,
 2    I've not really spent much time on this, but
 3    No. 1, we are somewhat offended by the order
 4    shortening time.
 5         The defense has had this matter for a long
 6    time and filed -- this is the third or fourth
 7    brief filed.  And I fail to understand why their
 8    failure to file on time, basically, comes out of
 9    our time to respond.  That notwithstanding, we
10    have a more serious quarrel with the brief,
11    itself.
12         There is a list of allegations in here
13    about violations of the right of discovery.  There
14    is, obviously, no citation to any record because
15    this is a non-statutory motion, and there is no
16    record because it is -- however, there is the
17    affidavit supporting -- there is nothing in
18    support of these allegations.  I would submit that
19    basically at this point, there is nothing before
20    the Court to rule on.
21         I would move that the brief be stricken for
22    both time limits and failure to, basically,
23    provide any kind of cause of action, if you want
24    to call it that, in this area; and, therefore, it
25    should be stricken.
26         Just to carry on, there are a number of
27    other points I'll make now; and, perhaps, we can
28    deal with the whole issue at the end.
```

RHONDA R. HARRIS, CSR NO. 7414

3

1           I think it is quite clear, as I entered in
2    our brief, under Section 1054.5 of the entire
3    scheme, it is not amenable to enforcement, for the
4    most part, at the preliminary hearing.
5           I realize this is something that people of
6    our era have trouble getting around because we are
7    use to the discovery prelim.  My position is that
8    aside from the Brady/Ruthford discovery, there is
9    no requirement in California law.
10          I'm sure, as the Court recalls, when
11   Proposition 115 was passed, a number of changes
12   occurred, most notably Section 1054, et cetera, of
13   the Penal Code.  But at the same time, the
14   provisions of Section 851(b) and other provisions
15   in the area regarding preliminary examination were
16   eliminated.
17          1054 states the exclusive method of
18   discovery in the State of California in criminal
19   cases.  Given that and given the elimination of
20   the sections that deal with discovery at
21   preliminary, I think then the Statute means what
22   it says.
23          And given the time limits set forth,
24   particularly in 1054.5(b), it is impossible in
25   most cases, particularly in a no-time-waiver
26   situation, for the discovery rules to apply at
27   preliminary for the simple reason the preliminary
28   would be over before the discovery time limits had

1    run.

2          Beyond that, we have another point here;

3    and that is that counsel, in his brief, has not

4    raised -- not indicated he complied with the

5    15-day or motion -- excuse me -- request under

6    Section 1054.5(b)(4) discovery. And, therefore,

7    it seems to me he has no remedy, if there were one

8    at this stage of the proceedings, because he

9    hasn't shown the basis for such a remedy.

10         Furthermore, even if he had shown that

11   under Section 1054(c), and (d), remedy is not

12   dismissal. The remedy ranges from fines and so on

13   down to dismissal, only if required by the United

14   States Constitution. I think he has made no such

15   showing in the brief of any harm approaching that,

16   that would require any kind of Constitutional

17   remedies to be applied.

18         The final point then would be -- and I

19   think the obvious one is that for a non-statutory

20.  motion to take place at all there has to be a

21   showing of harm such that defendant didn't receive

22   a fair hearing. Since the harm falls under the

23   statutory requirement of 1054, you have to go

24   along way to show an unfairness raising to that

25   level since, basically, as I say, Section 1054

26   doesn't give rise to dismissal in the first place.

27         For all those reasons, I move that the

28   motion to dismiss be denied.

```
 1              THE COURT:  All right.  Counsel.
 2              MR. McCORMICK:  Okay.  I'll address first
 3    the procedural complaint under California Rules of
 4    Court 227.  The brief was due on Friday, March
 5    20th.  I came to your chambers shortly after 9:00
 6    a.m. on Monday, March 22rd and explained to you
 7    that I didn't get it done by 5:00, but had it
 8    ready to file right then and you did shorten the
 9    time for me to file the motion.
10              As I explained to you then -- and I'll also
11    say on the record -- then the basis for this
12    motion has been failure of the prosecution to
13    completely disclose information in its possession
14    that dealt directly with the case.
15              And on March 11th of this year, in writing,
16    I did make an informal discovery request of
17    numerous items, including those listed in this
18    motion.  The earliest that they were made
19    available to me was March 20th, the day that the
20    papers would have been filed.
21              So I was in a spot where I actually came --
22    got several things either, in fact, late morning
23    or early afternoon.  I had to file the paper by
24    5:00.
25              As it turned out, the Inspector who
26    Mr. Burke, the Deputy District Attorney, assigned
27    to the trial of this case had picked up items from
28    a different packet on a related, but separate
```

RHONDA R. HARRIS, CSR NO. 7414

```
1    robbery.  And so, actually, I still didn't have
2    everything as of the day the papers were due.
3         So what I ended up doing is, short of
4    guessing that some of these things existed, I
5    mean, I asked for them.  And I did put a footnote
6    in the motion that the list was based on
7    information I had at that time.  And I did the
8    best I could in the time that I had.
9         Since I filed the papers, I have seen more
10   items than I had as of the time I filed the
11   papers.  I think the difference between a 5:00 on
12   Friday and a Monday -- I'm showing District
13   Attorney received my papers after 9:30 on Monday,
14   March 22rd -- is a very small difference,
15   occasioned in part by the date on which I was
16   actually given access to the information I was
17   complaining about, which turned out to be the very
18   date the papers were due.
19        But it is very reasonable for you to have
20   shortened the time just the two days.  And you
21   ought to decide this motion on its merits.
22        Mr. Baldwin has -- as far as there being a
23   factual basis for the motion, the defendant is
24   entitled to an evidentiary hearing on this motion,
25   and I have subpoenaed Sergeant Juarez, the
26   sergeant, from the robbery detail responsible for
27   the investigation of this case, as a witness.  And
28   he can testify to most, if not all, of the facts
```

1     on which we would rely in support of this motion.

2            He is under subpoena, and he is waiting

3     outside.  So I don't think the fact that there is

4     no affidavit filed in support of the motion is any

5     reason not to go forward with it.

6            As far as the right of the defendant to

7     discovery before the preliminary examination,

8     Penal Code Section 1054, itself, the very first

9     thing it states is that nothing in the Statute

10     should be interpreted as in any way diminishing

11     the right the defendant has under the Federal

12     Constitution, and it cites <u>Izazaga versus Superior</u>

13     <u>Court, 54 Cal.3d. 356.</u>

14            The Supreme Court made clear that the

15     statutory scheme passed by the voters as part of

16     Prop 115 in no way affected the Constitutional

17     requirement that the District Attorney has as far

18     as providing discovery.

19            Another point that we seem to go round and

20     round about is whether those Federal

21     Constitutional rights applied before or at the

22     time of the preliminary examination.  And the

23     cases which the District Attorney usually cite as

24     part of its argument is that a non-statutory

25     motion should be dismissed unless the defendant

26     shows prejudice are the very same cases that have

27     applied to the Federal Constitutional requirement

28     of discovery at the stage before the preliminary

RHONDA R. HARRIS, CSR NO. 7414

1   examination, namely Currie versus Superior Court,
2   230 Cal App. 3rd, 83 and Merrill versus
3   Superior Court, 27 Cal App.4th, 1586, both of
4   which were sited on pages 5 and 6 of my Points and
5   Authorities.
6         So I think what I should -- what I am
7   entitled to do is call Sergeant Juarez as a
8   witness to testify to what investigation he had
9   done and compare that with what we had received
10  as -- before the preliminary examination.
11        And what you will see is there is a
12  sizeable gap in the information, which we did not
13  have, but should have had, which would have
14  provided an additional basis for cross-examination
15  of the one and only witness called at the
16  preliminary examination.  And, therefore, he could
17  have affected the Magistrate's decision whether to
18  make a holding order.
19        So in that sense, I think with -- I have
20  made the best showing I can with what I have, and
21  I think it is enough to entitle my client to a
22  hearing.
23        MR. BALDWIN:  Your Honor, we have started
24  off with an interesting question, and that is what
25  Constitutional rights are involved in a procedure,
26  which is not even mandated under the Federal
27  Constitution?  There is no requirement for a
28  preliminary hearing at all.

1          We went around in circles with that, with

2     the Hawkins' case, as you recall; and the

3     Supreme Court found a need to have a

4     post-indictment preliminary hearing that was

5     thrown out with Proposition 115; as well there is

6     no Federal right.

7          The only Federal right -- and I'm not even

8     sure that the area of exculpatory evidence applies

9     to preliminary hearings. We can concede that for

10    the sake of argument.

11         But, again, preliminary hearing, as

12    created, rearranged by Proposition 115 is a

13    probable cause hearing only to show whether there

14    is a need for the defendant to stand trial. What

15    used to be a mini trial is no longer in existence.

16         Counsel is relying on the fact that the

17    Curry and Merrill cases that we cited upheld

18    discovery rights ignores the fact that those cases

19    were decided before Proposition 115 was passed.

20    So what they stand for now is not that.

21         There is some right to discovery at

22    preliminary, but only if you are going to have a

23    non-statutory motion. You have to show something

24    beyond a statutory violation; you have to show

25    harm to the defendant. Not only have they not

26    shown harm to the defendant, but they haven't even

27    shown the statutory violation.

28         THE COURT: Well, the first issue on the --

 1   it seems to me is -- are we talking about a <u>Brady</u>

 2   and <u>Ruthford</u> matter, or are we talking about a

 3   1054?

 4          I don't think <u>Brady</u> and <u>Ruthford</u> are

 5   applicable.  Therefore, if you rely upon the 1054

 6   discovery provisions, then that's -- that's sort

 7   of where I'm coming from.

 8          Now, one of the things that bothered me in

 9   reading this material was that, as you indicated,

10   some of this stuff you are guessing at.  And I

11   think that that's problematic when you have,

12   "Well, maybe they did this and maybe they did

13   that."

14          There is no declaration; there is no --

15   there is no -- really any information and belief

16   in terms of, you know, notes or logs of OPD

17   officers.  Maybe this is what they routinely do.

18          But more importantly, for example, the copy

19   of a robbery -- of the alleged robbery note, I

20   mean, that seems to me to be something that either

21   should exist or should not exist, and we ought not

22   to sort of guess about those kinds of things.

23          MR. McCORMICK:  Well --

24          THE COURT:  Photo line-up or not photo

25   line-up.  I mean, you know --

26          MR. McCORMICK:  I can tell --

27          THE COURT:  -- that seems to me to be

28   something we ought not to guess at, but in

1    addition to that --

2           MR. McCORMICK:  Sorry.

3           THE COURT:  -- in addition to that --

4           Let's assume, for the sake of argument

5    that -- that we don't get into whether there is a

6    right to prePX discovery or not.  I mean, the next

7    step seems to me is to -- is for the defense to

8    establish some prejudice from the denial, and I

9    don't see that as well.  So that's why I'm stuck.

10          MR. McCORMICK:  Well, one thing I didn't

11   have when I wrote this motion, which I now have,

12   is a log from Sergeant Juarez, indicating that --

13   as we didn't know when this preliminary

14   examination was conducted -- he did go to the

15   Mission National Bank on the day of the robbery;

16   he did show a photograph taken from the

17   surveillance tape of the robbery to the named

18   victim and the other two witnesses.  And so that

19   is backed up.  I have seen the robbery note.

20          I mean, like I said, before when I filed

21   the papers --

22          THE COURT:  Now, how do you know that?

23          MR. McCORMICK:  How do I know what I just

24   said?

25          THE COURT:  Yeah.

26          MR. McCORMICK:  Okay.  Since the time I

27   filed the papers, Inspector Coonyo (phonetic) made

28   available to me the entire packet of

1   Sergeant Juarez.  He investigated under -- in a

2   single packet both this robbery, which occurred at

3   the Mission National Bank on February -- March

4   27th, 1997, and the robbery at American Savings

5   Bank the day before, March 26, 1997.

6           Before the preliminary examination, my

7   office was given the incident report prepared by

8   the officer who first responded to the scene.  I

9   think his name is Aven.

10          THE COURT:  There is -- a short version

11  will do, Mr. McCormick.

12          MR. McCORMICK:  Okay.  Well, anyway, until

13  I saw the packet, I never saw the one-page log

14  prepared by Sergeant Juarez concerning his

15  activities of March 27th, '97.

16          So I do know, according to his log, that is

17  what he did.  And he has told me this afternoon in

18  the hall that, obviously, this log is correct.

19          MR. BALDWIN:  Your Honor, a point to be

20  raised here is the relevance of that.

21          If you know the facts of the case, as set

22  forth in the defense pleading, the defendant was

23  not even known at that time.  He wasn't arrested

24  for another week when he admitted a robbery at

25  some other bank.

26          The Sergeant who testified he went there

27  showed them photographs to have them pick out the

28  person who did the robbery.  They had no idea who

1    he was.  So I don't see what relevance that is to

2    anything.  At the very least, it is basic

3    discovery.  We're back to the 1054 question.

4         How that could possibly harm the defendant,

5    I have no idea, because he obviously saw the --

6    the witnesses saw the defendant.  So to say that

7    something is prejudicing him by seeing a film of

8    what they say doesn't make sense at all.

9         MR. McCORMICK:  Well, an area of

10   cross-examination could have been whether what

11   they were testifying about was their perception of

12   the robber in three-dimensional real life or

13   whether they were testifying to an identification

14   made based on a photograph.  And that is something

15   the Magistrate should have known when assessing

16   the credibility of that witness.

17        The other thing that is in this log, which,

18   again, we had no idea it was an FBI agent that

19   did, also, respond to the scene and, at least,

20   according to one witness there took a statement

21   from the very witness that testified and a prior

22   inconsistent statement was obtained.

23        And I still don't have that.  I've asked

24   for that, and I still don't have that.  I've asked

25   for any statement taken by the FBI agent.  I

26   didn't know his name until I saw this log.  That

27   would be -- then the case would be right on point.

28        The Stanton case, which I cited is exactly

```
 1    that, where for some reason a prior inconsistent
 2    statement of a material witness was withheld and
 3    the Court of Appeal held that the defendant was
 4    entitled to a new preliminary examination because
 5    the Magistrate didn't have the benefit of the
 6    impeachment of that witness with that important
 7    piece of evidence.
 8            MR. BALDWIN:  No.  That's all fine, but we
 9    don't know that there was such a thing in
10    existence.
11            And, basically, what counsel is arguing
12    now, as I follow it, is that the prosecution has
13    the requirement to hand over everything it has
14    without regard to 1054 at all.
15            Now, why did the Legislature of the People
16    waste time in creating this statutory scheme if,
17    in fact, there was an inherent right to everything
18    as soon as the Public Defender can think about it.
19    That's just not logical.
20            And, again, I would be inclined to agree
21    with the position somewhat if there was a showing
22    that we definitely suppressed an inconsistent
23    statement.  I wouldn't be here defending anything.
24            There was no showing by declaration; there
25    is no showing even, quote, "probable cause" to
26    believe that there is such a thing in existence,
27    and certainly not in the moving paper.
28            So, again, I would move that this matter be
```

```
 1    dismissed.
 2              MR. McCORMICK:  Well, I think I cited a
 3    case -- let's see, yes.
 4              Well, the Izazaga case, itself, which I did
 5    cite on Page 5 of my papers, makes clear that the
 6    failure to disclose evidence is a violation of the
 7    Federal Constitution regardless of why it was not
 8    disclosed, whether this was intentional or
 9    inadvertent.  So I'm not accusing the District
10    Attorney of hiding things from us on purpose.
11              But the effect it has on my client is the
12    same whether it was deliberate or unintentional.
13    He had a preliminary examination where the witness
14    was not as thoroughly cross-examined as the
15    witness could have been.
16              And Brady and Ruthford and the Memro cases
17    all say that information which could be used to
18    impeach a prosecution witness is the type of
19    information that must be disclosed under the
20    Federal Constitution.
21              So while there may not be a requirement to
22    disclose every piece of evidence, there is --
23    although, I wouldn't necessarily concede that --
24    even though there may not be such a requirement,
25    there clearly is a requirement that material that
26    could be used to impeach a prosecution witness
27    must be disclosed because that does have the
28    effect of being of assistance to the defendant.
```

1    MR. BALDWIN:  However, there is no showing

2    in this record; there is no such thing.  That's

3    our point.

4    THE COURT:  Well, I think that that -- that

5    that is the --

6    All we have is really maybe a statement by

7    a witness.  It may be inconsistent is, basically,

8    what you are arguing.  We don't know what that

9    statement is; we don't know what it says, and --

10    All right.  Anything further then?

11    MR. BALDWIN:  Submitted.

12    MR. McCORMICK:  I just wanted to be clear

13    that Sergeant Juarez is here and is prepared to

14    testify that he did show this photograph to the

15    witnesses on the day of the robbery.  And, in my

16    opinion, that could have affected their ability to

17    identify my client later.

18    And he has referred -- on another occasion

19    when he testified at the parole revocation hearing

20    of my client in June of '97, he referred to a

21    photo line-up that he conducted.  And I still have

22    not received any written documentation of such a

23    line-up, if it exists.  And I think I have the

24    right to have a hearing.

25    I don't think -- I don't have to support

26    this motion with declarations.  I think I should

27    be given the opportunity to ask Sergeant Juarez

28    these questions unless you are going to assume for

1    the purpose of this motion what he would testify.

2          THE COURT:  I'll assume for purposes of

3    this motion that that's what he'll testify to.

4          Anything further?

5          MR. BALDWIN:  Submitted.

6          MR. McCORMICK:  Submitted.

7          THE COURT:  Motion to dismiss is denied.

8          MR. McCORMICK:  All right.  Mr. Williams

9    also is requesting that the Public Defender be

10   discharged as his attorney.

11         THE COURT:  Okay.  When would you like a

12   hearing on that, Mr. Williams?

13         THE RESPONDENT:  Well, I think, Your Honor

14   I had told him before the hearing today.  He had

15   already knew.  He told me January -- February, the

16   24th when I came in.

17         THE COURT:  When did we have our last one?

18         THE DEFENDANT:  In January.  He told me

19   when I came back to Court that he would have me

20   on --

21         THE COURT:  You want to do it today?

22         THE DEFENDANT:  I had wanted to do it

23   before this hearing.

24         THE COURT:  I only have seven minutes for

25   you, Mr. Williams --

26         THE DEFENDANT:  We'll do it in seven

27   minutes.

28         THE COURT:  -- or I'll give you another

1    date and you think about it.

2         THE DEFENDANT:  We'll do it in seven

3    minutes because I had stated that this be heard

4    before this hearing.

5         THE COURT:  Okay.  Then it will be a

6    Marsden motion.

7         Ma'am, you have to leave the courtroom.

8         MR. McCORMICK:  I guess I'd like to release

9    Sergeant Juarez.

10        THE COURT:  That's fine.

11        THE BAILIFF:  Judge.

12                   (Off-the-record discussion.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATION</u>

1
2          I, RHONDA R. HARRIS, an Official Reporter
3   in the Superior Court of the State of California,
4   hereby certify that the foregoing proceedings were
5   reported by me, and were thereafter transcribed under
6   my direction into typewriting; that the foregoing is
7   a full, complete and true record of said proceedings.
8          I further certify that I am not of counsel
9   or attorney for either or any of the parties in the
10  foregoing proceedings and caption named, or in any
11  way interested in the outcome of the cause named in
12  said caption.
13          IN WITNESS WHEREOF, I have hereunto set my
14  hand this 7th day of June, 1999.

COPY

15
16
17          _____
18          RHONDA R. HARRIS
            CSR No. 7414
19
20
21
22
23
24
25
26
27
28

RHONDA R. HARRIS, CSR NO. 7414








Deceased Bro
ANTHONY WILLIAMS

ANTONIO WILLIAMS



ALL PHOTOS OF
ANTONIO WILLIAMS

CONSOLIDATED ARREST REPORT

Apr 8 97 picture of
physical lineup



